## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46205

| | | |
|---|---|---|
| SHANE ACKERSCHOTT and REBECCA ACKERSCHOTT, as husband and wife, | ) ) ) | |
| Plaintiffs-Respondents-Cross Appellants, | ) ) ) | Boise, December 2019 Term |
| v. | ) ) | |
| MOUNTAIN VIEW HOSPITAL, LLC, dba as REDICARE, | ) ) ) | Opinion Filed: February 6, 2020 |
| Defendant-Appellant-Cross Respondent, | ) ) ) | Karel A. Lehrman, Clerk |
| and | ) ) | |
| BUSINESS ENTITIES I through X, and JOHN DOE and JANE DOE, husband and wife, I through X, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Dane H. Watkins, Jr., District Judge.

The district court's rulings on RediCare's direct appeal are <u>affirmed</u>. We decline to reach the merits of the Ackerschotts' constitutional challenge of the cap on noneconomic damages. Neither party is entitled to costs or attorney fees on appeal.

Gjording Fouser, Boise, attorneys for Appellants. Stephen L. Adams argued.

Petersen Whitehead, Twin Falls, attorneys for Respondent. Jarom Whitehead argued.

_____

Justice BEVAN

### I.     NATURE OF THE CASE

This is a medical malpractice appeal. Shane and Rebecca Ackerschott (collectively "the Ackerschotts") sued Mountain View Hospital, LLC, doing business as Redicare ("Redicare"),

after Shane sustained an injury leading to paraplegia. A jury found RediCare's treatment of Shane breached the standard of care and awarded the Ackerschotts $7,958,113.67 in total damages. After judgment was entered, Redicare filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial. The Ackerschotts also moved to alter or amend the judgment. All post-trial motions were denied. Redicare appealed, arguing the district court erred by not submitting an instruction on comparative negligence to the jury and by allowing testimony of the Ackerschotts' expert witness. The Ackerschotts cross-appealed, arguing the cap on noneconomic damages imposed by Idaho Code section 6-1603 is unconstitutional. We affirm as to Redicare's direct appeal. We decline to reach the merits of the Ackerschotts' constitutional claim on cross-appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Shane Ackerschott's Treatment at Redicare.

On November 10, 2014, Shane Ackerschott ("Shane") felt an ache in his back while lifting freight at work. As the day continued, the pain worsened and Shane ultimately left work to seek medical attention. Shane's wife, Rebecca, drove Shane to Redicare, an urgent care facility in Idaho Falls, Idaho. Shane's initial physical examination noted, among other things, that he exhibited diminished range of motion in all directions and lower extremity numbness. Shane had trouble standing on request. Dr. Lloyd Stolworthy examined Shane. The parties dispute what happened during the examination. Dr. Stolworthy testified that after an initial brief examination, he told Shane that if Shane could not stand, Redicare would be unable to provide treatment and Shane should go to the emergency department. According to Dr. Stolworthy, Shane said he did not want to go to the emergency department. In contrast, Shane and Rebecca testified that Dr. Stolworthy did not recommend transfer to an emergency room. Even so, all parties agree that Shane was told he would need to get x-rays to assist with further treatment, and that he would need to stand to get the x-rays. Dr. Stolworthy testified to doing a brief physical examination, including asking Shane to stand, which Shane was able to do. Dr. Stolworthy left the examination room and ordered x-rays.

While waiting for the x-ray, Shane's condition worsened; he complained to a nurse of numbness in his legs, he could not feel tapping on his lap and he was emotionally upset. Dr. Stolworthy testified he thought treating the pain was "a pretty good idea" and ordered an anti-inflammatory called Toradol be administered. Shane was given an injection of the pain

2

medication which "took the edge off" and calmed him down. An x-ray technician then attended to Shane, gave him paper shorts and a gown to change into. Shane changed and began to walk to the x-ray room; however, he became dizzy and called for the technician, who brought a wheelchair over and wheeled Shane back to the examination room. No x-rays were taken.

Dr. Stolworthy then returned and expressed concern to the Ackerschotts about Shane's difficulty in standing. Dr. Stolworthy suggested the Ackerschotts go to the hospital to receive better care. The emergency department is across the street from Redicare. The Ackerschotts agreed to go to the hospital, but believed that Rebecca could drive them across the street to save on the expense of an ambulance. Dr. Stolworthy then explained to the Ackerschotts they would be going against medical advice by transporting to the hospital by private vehicle and as such the Ackerschotts were asked to sign a release form—which they agreed to do. While Dr. Stolworthy was preparing the release form, Shane began to get dressed. As Shane was putting on his shirt he heard a pop and immediately felt excruciating pain. Shane was transported to the hospital by ambulance and underwent emergency surgery. It was later discovered that Shane suffered a massive disk herniation in the tenth and eleventh level of his thoracic spine. Shane now suffers from permanent paraplegia.

### B. Course of Proceedings.

The Ackerschotts sued Redicare for malpractice, asserting various additional theories not relevant to this appeal. Redicare answered and asserted comparative negligence as one of its many affirmative defenses. In preparing for trial, Redicare moved in limine seeking to exclude two of the Ackerschotts' expert witnesses—Dr. Gerald Knouf and Dr. Fred Simon. The district court did not make a final ruling prior to trial, but told counsel the witnesses would likely be allowed to testify. The court specified that defense counsel should renew any objections raised in the motion in limine during trial.

The case went on to trial. At the close of the Ackerschotts' case, Redicare moved for a directed verdict arguing the Ackerschotts' expert, Dr. Simon, failed to satisfy the requirements of Idaho Code sections 6-1012 and 1013. The motion was denied and the trial continued. After the close of evidence, the Ackerschotts moved for a directed verdict on the issue of comparative negligence. Finding Redicare failed to provide sufficient evidence of causation, the district court granted the Ackerschotts' motion. As a result, no instruction on comparative negligence was

3

provided to the jury. The jury found Redicare breached the standard of care and awarded damages in the amount of $7,958,113.67.

After judgment was entered, the parties entered into a stipulation to reduce the award to $6,575,354.58, taking into account the cap on noneconomic damages compelled by Idaho Code section 6-1603. The parties also stipulated that the Ackerschotts retained the right to challenge the constitutionality of the cap. Final judgment was entered on May 30, 2018. Redicare later moved the district court for judgment notwithstanding the verdict, or in the alternative, a new trial, asserting numerous errors in the court's rulings, including its ruling on Shane's comparative fault, the failure to give the jury an instruction on that issue, and the erroneous admission of Dr. Simon's expert testimony. On June 14, 2018, the Ackerschotts moved the district court to alter or amend the judgment, requesting the cap on noneconomic damages be declared unconstitutional. All post-trial motions were denied. Redicare timely appealed. The Ackerschotts filed a cross-appeal.

### III.    ISSUES ON APPEAL

1.    Whether the district court erred by: (A) granting the Ackerschotts' motion for a directed verdict on comparative negligence; (B) not providing the jury an instruction on comparative negligence; or (C) denying Redicare's motion for a new trial on comparative negligence.
2.    Whether the district court erred in admitting Dr. Simon's expert testimony.
3.    Whether Idaho Code section 6-1603, the noneconomic damages cap, is constitutional.
4.    Whether either party is entitled to attorney fees under Idaho Code section 12-121.

### IV.    STANDARDS OF REVIEW

The standards of review directly relevant to each argument on appeal will be addressed below as pertinent to the analysis of those claims.

### V.    ANALYSIS

Redicare asserts two arguments on appeal. First, Redicare argues the district court erred by granting the Ackerschotts' motion for a directed verdict and by not providing the jury an instruction on comparative negligence. Redicare also contends the district court again erred by denying its motion for a judgment notwithstanding the verdict, or in the alternative, motion for a new trial on comparative negligence. Second, Redicare argues the district court erred by allowing testimony of the Ackerschotts' expert witness, Dr. Simon, because Dr. Simon failed to satisfy the foundational requirements of Idaho Code sections 6-1012 and 6-1013. We affirm.

4

On cross-appeal, the Ackerschotts argue the cap on noneconomic damages imposed by Idaho Code section 6-1603 is unconstitutional. According to the Ackerschotts, the cap violates both a plaintiff's right to jury trial and equal protection under the Idaho Constitution. We decline reaching the merits of the Ackerschotts' argument regarding the constitutionality of the cap.

**A.** **The district court did not err by granting a directed verdict for the Ackerschotts on comparative negligence, by declining to provide the jury an instruction on comparative negligence, and by denying Redicare's motion for a new trial on comparative negligence.**

Redicare argues that the district court erred in three particulars regarding the jury's consideration of Shane's comparative fault. First, the court erred by granting Ackerschotts' motion for directed verdict on that issue. Second, the jury should have been instructed on comparative fault. Third, the district court erred in failing to grant Redicare a new trial. We will discuss each subject in turn.

1.  The district court did not err in granting Ackerschotts' motion for directed verdict.

In determining whether a directed verdict should have been granted, this Court "applies the same standard as does the trial court which passed on the motion originally." *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986) (citation omitted). Whether a verdict should be directed "is purely a question of law and on those questions, the parties are entitled to full review by the appellate court without special deference to the views of the trial court." *Id*. In reviewing the record, we determine

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Alexander v. Stibal*, 161 Idaho 253, 259, 385 P.3d 431, 437 (2016) (citation omitted). Reviewing the record against this standard, we find no error occurred below.

This question arises in the context of Redicare's third affirmative defense, in which it asserted:

> The injury and damage, if any allegedly sustained by the Plaintiffs *may have been proximately caused by the negligence or fault of* parties, persons, or entities other than Mountain View, including *Plaintiffs*, and the negligence of all such entities

5

must be compared pursuant to the comparative negligence laws of the state of Idaho.

(Emphasis added). Thus, from the outset Redicare has recognized its burden to prove what it alleged: that Shane's injury and damage was "proximately caused by" his negligence. The party asserting an affirmative defense must prove all of its elements by a preponderance of the evidence. *Stilwyn, Inc. v. Rokan Corp.*, 158 Idaho 833, 839, 353 P.3d 1067, 1073 (2015) (citation omitted). Comparative negligence is an affirmative defense, which "serves to allocate damages between two or more parties at fault in causing harm . . . ." 57B AM. JUR. 2D *Negligence* § 954; *see also* I.C. §§ 6-801, 6-802. A defendant asserting such a defense must prove the elements of a negligence claim to establish the plaintiff's fault. That proof would include the element of a causal connection between the plaintiff's actions and his injuries.

In Idaho, negligence consists of four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Johnson v. Wal-Mart Stores, Inc.,* 164 Idaho 53, 56, 423 P.3d 1005, 1008 (2018). Even so, the legal requirement to establish these elements is elevated in a medical malpractice case by what this Court has called a "stricter burden of proof." *Jones v. Crawforth*, 147 Idaho 11, 16, 205 P.3d 660, 665 (2009). This is so because Idaho statutes require plaintiffs in these cases to offer evidence of the duty and the breach of that duty through "direct expert testimony of the standard of health care practice of the community . . . ." I.C. § 6-1012; *see also* I.C. § 6-1013 ("The applicable standard of practice and the medical provider's failure to meet that standard must be established by testimony of one or more knowledgeable, competent expert witnesses.").

Thus, the "stricter burden" applies to plaintiffs in meeting the first two elements of a medical malpractice case against a medical provider. This burden is not heightened for a defendant asserting comparative fault in a malpractice case because the defendant must only prove the nature of the plaintiff's alleged simple negligence. The issue in this case, however, is whether the *proximate cause element* likewise requires proof by expert testimony, for both plaintiffs and defendant medical providers.

We have reached divergent results on this question in the past, based on the particular circumstances presented in these cases. *Compare Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 785, 25 P.3d 88, 98 (holding "a jury could reasonably and naturally infer from the

6

chain of circumstances, [without expert testimony], that a breach of the standard of care . . . proximately caused [the plaintiff's] injuries."), *with Easterling v. Kendall*, 159 Idaho 902, 917, 367 P.3d 1214, 1229 (2016) (holding "a jury comprised of lay people was not qualified to determine" causation from the chain of circumstances; direct expert testimony was required.).

Redicare's question is therefore resolved by applying the principles and dissimilarities of *Sheridan* and *Easterling*. We recognize that in cases like the one before us, "[t]here is no bright-line rule to determine whether expert testimony is required to prove proximate cause. The inquiry is highly dependent on the specific circumstances of each case." *Easterling*, 159 Idaho at 917, 367 P.3d at 1228. Yet, we hold that in a medical malpractice case like this one, its "highly-technical medical questions require[ ] the testimony of medical experts in order for a reasonable jury to find proximate cause." *Id.* Thus, in a medical malpractice case with the complexities of this one, in which the defendant asserts that the plaintiff's negligence was a cause of the plaintiff's injuries,

> a [defendant] has the burden of proving not only that a [plaintiff] failed to use ordinary care, but also that the [plaintiff's] failure to use ordinary care was the proximate cause of damage to the plaintiff. To establish proximate cause, a [defendant] must demonstrate that the [plaintiff's] negligence was both the actual and legal (proximate) cause of his or her injury. Actual cause is a factual question focusing on the antecedent factors producing a particular consequence. Legal cause exists when it is reasonably foreseeable that such harm would flow from the negligent conduct.

*Easterling*, 159 Idaho at 914, 367 P.3d at 1226 (citations and internal quotations omitted).

Redicare argues that this case is much more like *Sheridan* than it is *Easterling*. It argues that there is sufficient evidence to "allow a jury to naturally infer that Shane was a proximate cause of his injuries in the chain of circumstances presented to the jury." This argument fails for the same reason that the plaintiffs' argument in *Easterling* failed. The nature and circumstances of Shane's injury are so difficult and medically complex that Redicare was required to present testimony that Shane's conduct was a substantial factor leading to his injury.

Here, the district court recognized the proper legal standard required to establish proximate cause in these cases; it cited *Easterling* and *Sheridan* and their divergent circumstances, and then noted in granting the Ackerschotts' motion for directed verdict:

> You know, the question is whether Mr. Ackerschott, consistent with the Defense's affirmative defense, owed a duty of care, breached that duty of care, and that that breach was a proximate cause of his own sustained damages. I think counsel has

7

appropriately identified at least two areas where this gives rise. The first is going to the hospital, and the second is the ambulance. . . . *[T]he real difficulty this [c]ourt is finding is the testimony related to the proximate cause if there is any. I do not believe there is any testimony that satisfies the authority [and] the instructions the court will give with regards to the proximate cause.* There are inferences, and . . . nuance[s] here between what the experts for the Defense are arguing as it relates to the standards of care and the issue of immobilization. But I'm quite certain that there has been no evidence, substantial or otherwise, not sufficient in quantity and not probative in value that reasonable minds could conclude that there is, in fact, a proximate cause between these failures, if we accept the argument of the Defense, of going to the hospital and the ambulance contributed to the injury. And that's the difficulty that the [c]ourt is – is – is finding. I haven't been given any specific testimony that addresses that concern that it would have made a difference.

(Emphasis added).

The district court thus recognized the lack of expert testimony tying Shane's initial refusal to go to the emergency room and his later refusal to go by ambulance, to his injury. While Redicare's expert, Dr. Hodges, testified, "if I give somebody a recommendation and they cannot or choose not to follow it, . . . the responsibility for whatever we, therefore, do rests partially with them," this vague statement does not relate to the specifics of this case and is too broad to establish that the refusal was a substantial factor in Shane's injury. Moreover, the reasons that Dr. Stolworthy gave the Ackerschotts for going by ambulance, rather than by car, never included the potential to aggravate Shane's injury; instead, Dr. Stolworthy spoke about potential wait times of four or five hours versus ten or fifteen minutes, and that the Ackerschotts could get lost on their way, or get in an accident while driving across the street to the hospital. These concerns, while potentially valid, had nothing to do with the potential exacerbation that could occur to Shane's spine if he didn't sit still and wait to go by ambulance.

Thus, to avoid a directed verdict Redicare needed to present sufficient evidence for a reasonable jury to find that Shane's initial refusal to go to the emergency room and later refusal to go by ambulance was a *substantial factor* in causing his paralysis. *Cf. Easterling*, 159 Idaho at 915, 367 P.3d at 1226 ("Proximate cause in medical malpractice cases involving more than one possible cause of injury will be established if it is shown that the defendant's conduct was a substantial factor in bringing about the injury suffered by the plaintiff." ).

8

Redicare responds by arguing that the district court applied a "but for"[1] proximate cause standard to its affirmative defense, while applying the substantial factor standard to the Ackerschotts. Redicare misconstrues the district court's holding. The district court did not require Redicare to meet a "but for" standard; it required that there be some direct evidence that Shane's choices and/or behavior had a causative effect on his spinal cord injury. In denying Redicare's motion for JNOV or for a new trial, the court held:

> In order to avoid a directed verdict in this case, [Redicare] needed to present sufficient evidence for a reasonable jury to find that Shane's initial refusal to go [to] the emergency room and later refusal to go by ambulance was a *substantial factor* in causing his paralysis. Much like *Easterling*, the testimony in this case pertaining to the anatomy of the spine, its mechanisms of movement, and the particularities of Shane's injury were lengthy and complicated. Ackerschotts' expert testified of the chain reaction that lead to Shane's paralysis: Shane's rotational movement caused the posterior longitudinal ligament to rupture and tear, which in turn caused the annulus fibrosus fibers to separate, propelling disc materials outwards to crush the spinal cord. Defendant's expert, however, opined that it was speculative to conclude the rotational movement caused the disc to protrude and that the thoracic spine typically did not allow for rotation. The record does not contain any evidence, however, of what impact a quicker departure to the emergency room, including by ambulance, would have had on Shane's spine or whether Shane's refusal was *a substantial factor* in causing his paralysis.
>
> The jury would have been left to speculate regarding questions such as: whether the spine would have been immobilized prior to transport, what impact transport to the emergency room would have had on Shane's spine, and whether Shane's arrival and treatment at the emergency room would have necessitated movement that would have put the stability of his spine at risk. The jury could not infer what impact such transportation and movement would have had on Shane given the complexity of his spinal condition.
>
> ….
>
> Given the complexity of spinal anatomy and mechanics and the dispute over what caused the disc's protrusion, a jury comprised of lay people was not qualified to determine whether Shane's refusal to go to the emergency room and refusal of transport was *a substantial factor* in causing his injuries.

(Emphasis added).

---

[1] The "but for" causation test is used when there is only one actual cause of an injury. *State v. Wisdom*, 161 Idaho 916, 921, 393 P.3d 576, 581 (2017); *Newberry v. Martens*, 142 Idaho 284, 288, 127 P.3d 187, 191 (2005).

Thus, the district court did not unfairly disadvantage Redicare by misapplying the lawRedicare. The court directly applied *Easterling* to the facts and evidence presented in the case, and appropriately granted the directed verdict on this issue. Redicare was not required to prove a negative – that Shane would not have injured his spine if he would have gone to the hospital, ultimately via ambulance. Redicare *was* required to have an expert testify that Shane's failure to do so was a substantial factor leading to his injury. No expert made such a statement, and thus there was no "sufficient evidence to justify submitting the claim to the jury." *Alexander v. Stibal*, 161 Idaho 253, 259, 385 P.3d 431, 437 (2016).

It is also important to note what the parties argued regarding causation during trial. Ackerschotts' experts opined at trial, to a reasonable degree of medical certainty, that Dr. Stolworthy's failure to immobilize or otherwise restrict Shane's movement was a substantial contributing factor in his injury.  It is undisputed that Dr. Stolworthy did not advise Shane to restrict his movement at any time. The Patient Transfer Record that Dr. Stolworthy was preparing when Shane was getting dressed also included a notation from the doctor that Shane's condition on transfer was "stable," and that "no material deterioration of the condition is likely, within reasonable medical probability, to result or occur during the transfer of the patient from [Redicare] . . . ."

Given these facts, Redicare's defense strategy during trial was that it made no difference that Shane was not immobilized while in Redicare's care, because the cause of Shane's spinal injury was too speculative to reach that conclusion. Redicare challenged Shane's expert's causation theory at trial through the testimony of another of its own experts, Dr. Greenwald, who opined that the injury *could not have been caused* by a failure to immobilize the patient. He testified:

> Q.    Dr. DeLong [plaintiff's expert] testified that, based upon Mr. Ackerschott's testimony of putting on his shirt in a rotational motion, that that caused this central protrusion into the spinal cord. Can you comment on that based upon any of those films? Do you believe it was a central protrusion caused by a rotational motion?
>
> A.    All we know is what the MRI looked like when he went to Eastern Idaho Regional Medical Center. Any idea of where the disc was prior to that is speculation. Whether there was a pop, whether there was pain, what, we just don't know. He could have had a disc herniation at that point pressing on the spinal cord. Because we get asymptomatic disc herniations pressing on the spinal cord. That occurs. It could have reached critical mass, the

critical pressure, with the sentinel event of – of that work-related injury that caused more pressure on the spinal cord. The chance of putting on a [sic] his shirt with a rotational movement in the thoracic spine, I – I can't say that I've ever seen it. I'm never going to say never in that situation, but the thoracic spine usually doesn't allow for rotational movement.

Given that the parties' medical experts were diametrically opposed about the proximate cause for Shane's injury, coupled with the medical complexity of the case, the progression of symptoms and questions about how Shane's movement might have changed things, this case is squarely positioned on the *Easterling* end of the spectrum. Such knowledge is outside the common experience of an average jury. Dr. Greenwald testified "there's no high level, evidence-based medicine that immobilization helps at all for any injury." He further testified of a study where individuals were not immobilized, "brought in in the backs of cars, carried in, assisted walking in, but there was no formal immobilization done. . . ." Those patients had no meaningful difference in outcome from those patients who were immobilized. He concluded that "there's less than 2 percent chance that immobilization helps. . . . [Which] mean[s] that, most likely, immobilization hurts." Given this testimony, it is hard to conceive how Shane's refusal to go immediately to the hospital, or to take an ambulance, made any difference. Thus, it is no surprise no expert testified that Shane's refusal to go to the emergency department or his refusal to take an ambulance was a substantial factor in causing the injury that Shane suffered. Nor was it ever testified that Shane's injury could have been prevented through those means.

With this record the district court correctly granted the motion for a directed verdict on Redicare's contributory fault affirmative defense. The complexity of the case, medical factors, and uncertainty among those experts required direct expert testimony from Redicare on the causation element for Shane's alleged involvement in his own injury.

2. <u>The district court did not commit legal error in failing to instruct the jury on comparative fault.</u>

"This Court exercises free review over whether a jury was given proper instructions." *State v. Capone*, 164 Idaho 118, 122, 426 P.3d 469, 473 (2018). "The standard of review of whether a jury instruction should or should not have been given, is whether there is evidence at trial to support the instruction," *Clark v. Klein*, 137 Idaho 154, 156, 45 P.3d 810, 812 (2002). "A trial court is under the duty to instruct upon every reasonable theory of the litigants that is recognized by law as presenting a basis of a claim of relief or a defense thereto, where such theory finds support in the pleadings and the evidence." *Hodge v. Borden*, 91 Idaho 125, 136,

11

417 P.2d 75, 86 (1966). "A jury instruction need not be given if the instruction is not supported by the facts of the case." *Puckett v. Verska*, 144 Idaho 161, 167, 158 P.3d 937, 943 (2007).

For the reasons discussed directly above, we hold the district court did not err by refusing to give the jury an instruction on comparative negligence. Redicare failed to provide sufficient evidence establishing Shane's initial refusal to go to the hospital, and his later refusal to go there by ambulance was a proximate cause of his injury. As a result, there was insufficient evidence at trial to support the instruction.

Moreover, when discussing the Ackerschotts' directed verdict motion, Redicare essentially conceded an instruction on comparative negligence would be unnecessary. Redicare agreed the issue of proximate cause had been a struggle for the parties and the court and explained:

[M]ore that I think about it, they may be right. It may be that we don't need the comparative negligence. If . . . they have a negligence claim as two components, [Dr. Stolworthy] should have immobilized [Shane] or [Dr. Stolworthy] should have advised, we can argue that Dr. Stolworthy didn't breach the standard of care in either respect, that he did give appropriate advice, and, in that case, they haven't met their burden, so we don't have the onus of proving proximate cause.

This concession coupled with the lack of evidence supports our holding that the district court did not err by declining to provide the jury an instruction on comparative negligence.

3. The district court did not abuse its discretion in failing to grant Redicare JNOV or a new trial.

"When based on IRCP 50(b), a motion for [judgment notwithstanding the verdict] is treated as a delayed motion for a directed verdict and the standard for both is the same." *SilverWing at Sandpoint, LLC v. Bonner Cty.*, 164 Idaho 786, 794, 435 P.3d 1106, 1114 (2019) (quoting *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986)). "In reviewing a decision to grant or deny a motion for directed verdict or a judgment notwithstanding the verdict, this Court applies the same standard as that applied by the trial court when originally ruling on the motion." *Alexander v. Stibal*, 161 Idaho 253, 259, 385 P.3d 431, 437 (2016) (quoting *Waterman v. Nationwide Mut. Ins. Co.*, 146 Idaho 667, 672, 201 P.3d 640, 645 (2009)).

"The decision by a trial court to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear

and manifest abuse of discretion." *Litke v. Munkhoff*, 163 Idaho 627, 632, 417 P.3d 224, 229 (2018) (quoting *Barnett v. Eagle Helicopters, Inc.*, 123 Idaho 361, 363, 848 P.2d 419, 421 (1992)). Thus, this Court reviews a motion for a new trial under IRCP 59(a) for abuse of discretion. *Id.*

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essential elements. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

In applying the legal standard of Rule 50(b), the district court properly denied Redicare a JNOV on the question of comparative fault, for the reasons set forth above. In ruling on Redicare's motion for a new trial, the district court correctly perceived the issue as one of discretion. As we have set forth, the district court acted within the outer boundaries of its discretion as it recognized the applicable standards and legal principles. It correctly applied those legal principles and acted consistently with them as it explained controlling precedent establishing when an expert is necessary to prove proximate cause. Finally, the district court reached its decision by an exercise of reason after comparing the facts here to *Easterling* and *Sheridan* and ultimately concluding the facts to be more similar to those of *Easterling* due to the complex nature of Shane's injury. The district court therefore did not abuse its discretion in denying Redicare's motion for a new trial.

**B.      Whether Dr. Simon satisfied the foundational requirements of Idaho Code sections 6-1012 and 6-1013 to testify as an expert was not adequately preserved below.**

Redicare argues the district court erred by allowing Dr. Simon to testify as an expert witness because Dr. Simon failed to provide a sufficient foundation under Idaho Code sections 6-1012 and 6-1013 for his opinions. According to Redicare, Dr. Simon, an out-of-area expert, lacked actual knowledge of the local standard of care because Dr. Simon did not speak with any family medicine physician who was familiar with the that standard. They added that the local standard of care was not supplanted by a national standard, the depositions Dr. Simon reviewed did not specify the local standard of care, and the internal policies Dr. Simon reviewed were inadequate. In response, the Ackerschotts assert Redicare failed to preserve this issue for appeal. According to the Ackerschotts, the district court did not rule on the limine motion at the pretrial

13

hearing and Redicare raised no objection to Dr. Simon's foundation at trial. We agree with the Ackerschotts and hold the issue on Dr. Simon's foundation was not preserved.

1. Redicare failed to preserve the issue of whether Dr. Simon satisfied the foundational requirements of Idaho Code sections 6-1012 and 6-1013.

"For an objection to be preserved for appellate review, 'either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context.' " *Hansen v. Roberts*, 154 Idaho 469, 473, 299 P.3d 781, 785 (2013) (quoting *Slack v. Kelleher*, 140 Idaho 916, 921, 104 P.3d 958, 963 (2004)). Dr. Simon testified at trial. During his testimony, the first objection made by the defense concerned the form of a question being asked. The second objection was made based on leading the witness. Another objection to leading the witness was made during the redirect examination of Dr. Simon. The defense made no additional objections when Dr. Simon was called again to testify in rebuttal. The trial record thus lacks any objection to Dr. Simon's expert testimony based on inadequate foundation.

Even so, Redicare argues the objection was clearly raised in its pretrial motion in limine. This Court reviews the district court's decision to grant or deny a motion in limine for an abuse of discretion. *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005). "When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded." *Kirk v. Ford Motor Co.*, 141 Idaho 697, 701, 116 P.3d 27, 31 (2005) (citing *Gunter*, 141 Idaho at 25, 105 P.3d at 685). "[M]otions in limine seeking advanced rulings on the admissibility of evidence are fraught with problems because they are necessarily based upon an alleged set of facts rather than the actual testimony which the trial court would have before it at trial in order to make its ruling." *State v. Hester*, 114 Idaho 688, 700, 760 P.2d 27, 39 (1988). A district court therefore may exercise its discretion by deciding "that it is inappropriate to rule in advance on the admissibility of evidence based on a motion in limine, [and] defer [its] ruling until the case unfolds and there is a better record upon which to make [its] decision." *Id*. If the court defers ruling on the motion, the moving party must reassert its objections as the evidence is offered or else the objection will not be preserved. *Id*. "If, however, the trial court *unqualifiedly* rules on the admissibility of evidence prior to trial no further objection is required to preserve the issue for appeal." *Kirk*, 141 Idaho at 702, 116 P.3d at 32 (emphasis added).

14

Here, Redicare moved in limine requesting the district court exclude testimony of the Ackerschotts' expert witnesses—Dr. Knouf and Dr. Simon. As for Dr. Simon, the basis for the motion was that Dr. Simon lacked the requisite qualifications and foundation imposed by Idaho Code sections 6-1012 and 6-1013. The motion was heard by the district court at a pretrial conference. Redicare argues now that the district court unqualifiedly ruled on the motion when the district court said "I accept the experts' preparation by reviewing the UpToDate[2] literature and a review of the depositions of [Redicare] employees, particularly Dr. Stolworthy." However, Redicare's reference solely to this statement is incomplete. The district court first mentioned that the determinations made that day were subject to the necessary occurrences that would be expected at trial, including laying proper foundation. More, the district court repeatedly accentuated the fact that more information would be forthcoming at trial. For example, the district court first said, "[w]hat you're going to find is that *I suspect* that Plaintiffs' witnesses will, in fact, be ultimately able to testify." (Emphasis added). The district court then elaborated that "given the current state of authority, what [p]laintiffs *would need to establish* is a nexus to the community standard of care. *And I think that can be reasonably done* and satisfied with reasonable efforts." (Emphasis added). The district court continued, stating it agreed with *Dr. Knouf's* statements about how he came to have actual knowledge of the standard of care and said "I *may* agree, although *I think I will need to hear how he comes to that conclusion at trial*." (Emphasis added). As for how Dr. Simon became familiar with the standard of care, the district court stated "but the point is there was some degree of training *that I would expect to be established at trial*." (Emphasis added). After briefly discussing the materials reviewed, the district court then explained "reviewing the depositions, the UpToDate material, and one of the witnesses' circumstances being board certified, this [c]ourt finds that they *will likely* be subject to have satisfied that foundational requirement and being [sic] permitted to testify." (Emphasis added). But the district court expressed it was not making a written decision. In closing on the issue, the district court instructed:

> Okay. And – and the way I anticipate we could – [defense counsel], *when we get to that point, make your objections*. We'll reference, you know, the argument that was made today, and – and we'll – we'll move along. If it's outside of what we've

---

[2] UpToDate is an online service that creates treatises and summaries of all types of different syndromes and diseases and processes.

talked about today, then, obviously, we can deal with it at trial and even, you know, excuse the jury if we need to.

(Emphasis added).

Although not absolutely clear that the district court would make a ruling on the admissibility of Dr. Simon's testimony at trial, it could be reasonably inferred that the district court's statements meant that it would hear more information at trial and then weigh in on the issue if there was still an objection. Although the oral rulings made at the pretrial hearing are somewhat vague, it is clear the district court did not *unqualifiedly* rule that Dr. Simon satisfied the foundational requirements of Idaho Code sections 6-1012 and 6-1013. Under the circumstances, it is difficult to ascertain whether Redicare made a strategic choice not to object, or simply forgot to do so. Either way, we hold that the objection to Dr. Simon's foundation was not preserved for appeal because no renewed objection was made during trial and the pretrial objection was not adequately preserved by the motion in limine.

2. The district court did not err in denying Redicare's motion for a directed verdict.

After the close of the Ackerschotts' case, Redicare moved for a directed verdict arguing the Ackerschotts failed to offer admissible evidence establishing the local standard of care or that the standard was breached. The motion was denied. As for Dr. Simon's foundation, the district court reasoned:

> This particular doctor reviewed medical records of the [p]laintiff. And as I understand it, the testimony was consistent with the proffer that was produced at our motion in limine reaching the point at which the [c]ourt could made its conclusion that this was a physician-witness expert that, in fact, could speak to the local standard of care, reviewing depositions of Dr. Stolworthy and the [p]laintiff; reviewing UpToDate, which the [c]ourt considered authority; the policies, and among other things.

Thus, the district court found sufficient evidence that would justify submitting the case to the jury. We hold the district court did not err in denying Redicare's motion for a directed verdict.

C. **We decline to reach the merits of the Ackershcotts' constitutional claim because the Ackerschotts' motion to alter or amend the judgment below was untimely.**

On cross-appeal, the Ackerschotts argue Idaho Code section 6-1603, the noneconomic damages cap, violates the Idaho Constitution. In response, Redicare argues the Ackerschotts' motion to alter or amend the judgment was untimely and the district court erred in ruling on the motion because the district court lacked subject matter jurisdiction. Redicare acknowledges the parties entered into a stipulation that permitted the Ackerschotts to challenge the constitutionality

16

of the cap, but it argues the stipulation did not permit the Ackerschotts to file an untimely motion and extend the subject matter jurisdiction of the district court. We agree with Redicare and hold the district court erred in ruling on the motion to alter or amend the judgment because the motion was untimely.

Subject-matter jurisdiction can be raised at any time. *Idaho State Ins. Fund By & Through Forney v. Turney*, 130 Idaho 190, 191, 938 P.2d 1228, 1229 (1997) ("An objection that is not raised before the lower court ordinarily will not be considered on appeal, unless the objection raises a question of subject matter jurisdiction."). Moreover, subject matter jurisdiction may be raised *sua sponte* by a trial court or an appellate court. *State v. Kavajecz*, 139 Idaho 482, 484, 80 P.3d 1083, 1085 (2003) ("Even if jurisdictional questions are not raised by the parties, we are obligated to address them, when applicable, on our initiative."); *see also State v. Armstrong*, 146 Idaho 372, 374, 195 P.3d 731, 733 (Ct. App. 2008) ("Accordingly, a party may assert a lack of subject matter jurisdiction for the first time on appeal . . . and the issue may even be raised *sua sponte* by a trial court or appellate court."). "This Court has adopted a presumption that courts of general jurisdiction have subject matter jurisdiction unless a party can show otherwise." *Troupis v. Summer*, 148 Idaho 77, 80, 218 P.3d 1138, 1141 (2009) (citing *Borah v. McCandless*, 147 Idaho 73, 78, 205 P.3d 1209, 1214 (2009)).

Redicare argues that IRCP 59(e) imposes strict deadlines that divest the district court of jurisdiction if not adhered to. Rule 59(e) permits a party to file a motion to alter or amend a judgment. The rule states "[a] motion to alter or amend the judgment must be filed and served no later than 14 days after entry of the judgment." *Id*. Rule 2.2(b)(3) prohibits the district court from extending the time requirements of Rule 59(e). This is echoed by case law. *See Wheeler v. McIntrye*, 100 Idaho 286, 289, 596 P.2d 798, 801 (1979) ("The 'Motion to Alter Judgment' was brought under Rule 59(e), and was likewise subject to the strict 1[4] day requirement of Rule 59. Since the motion was not filed within 1[4] days of entry of judgment, the court had no power to grant the requested relief.").

The motion to alter or amend the judgment was filed on June 14, 2018, one day later than the deadline imposed by IRCP 59(e). Seeing that district courts lack power to extend deadlines imposed by IRCP 59(e), it was improper for the district court to rule on the motion. Although the parties entered into a stipulation that specifically retained the right of the Ackerschotts to challenge the constitutionality of the cap on noneconomic damages, "[p]arties cannot confer

jurisdiction upon the court by stipulation, agreement, or estoppel." *H & V Eng'g, Inc. v. Idaho State Bd. of Prof'l Engr's and Land Surveyors*, 113 Idaho 646, 648, 747 P.2d 55, 57 (1987). Therefore, we hold the district court lacked subject matter jurisdiction to rule on the motion to alter or amend the judgment. As a result, we decline to reach the merits of the Ackerschotts' argument over the constitutionality of the cap on noneconomic damages imposed by Idaho Code section 6-1603.

**D.      Neither party is entitled to attorney fees under Idaho Code section 12-121.**

On appeal, Redicare requested costs under IAR 40 but did not request fees due to the complexity of the issues raised on appeal. The Ackerschotts requested attorney fees under IAR 41 and Idaho Code section 12-121. According to the Ackerschotts, the appeal is frivolous because Redicare is simply asking this Court to second-guess the trial court.

On cross appeal, Redicare argues it is entitled to attorney fees under section 12-121 because the Ackerschotts' position on the noneconomic damages cap is frivolous, unreasonable, and without foundation because the cap has already been upheld by this Court. Redicare also argues it is entitled to attorney fees under section 12-121 because it had to defend an argument on cross appeal that is procedurally deficient.

Idaho Code section 12-121 allows "[i]n any civil action, the judge [to] award reasonable attorney's fees to the prevailing party or parties [if] the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." This Court holds "[s]uch circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017). Attorney fees will "not be awarded when good faith arguments are made on appeal." *Id*.

First, we have affirmed the district court in regards to Redicare's appeal. As a result, the Ackerschotts are the prevailing party on direct appeal. However, this Court declines to award fees due to the complexities of the issues presented. Proximate cause is a complicated issue that is often a matter of fair debate. *See Doe v. Sisters of Holy Cross*, 126 Idaho 1036, 1039, 895 P.2d 1229, 1232 (Ct. App. 1995). The issue of whether adequate foundation was laid in accordance with Idaho Code sections 6-1012 and 6-1013 was raised in good faith and supported by argument that the nature of the district court's oral ruling was a final determination on that question. *See*

18

*Samples v. Hanson*, 161 Idaho 179, 384 P.3d 943 (2016); *see Mattox v. Life Care Ctrs. of America, Inc.*, 157 Idaho 468, 337 P.3d 627 (2014); *Hall v. Rocky Mountain Emer. Physicians, LLC*, 155 Idaho 322, 312 P.3d 313 (2013). Thus, on direct appeal, neither party is entitled to attorney fees.

Second, we declined to reach the merits of the Ackerschotts' constitutional claim because we hold the district court lacked subject matter jurisdiction due to the untimeliness of the motion to alter or amend the judgment. Even so, since Redicare stipulated that the issue be heard below, it cannot now reverse course and argue that addressing the issue on appeal is frivolous. As a result, neither party prevailed as a whole and, thus, neither party is entitled to attorney fees or costs on appeal.

## VI. CONCLUSION

We affirm the district court's rulings on Redicare's direct appeal. We decline to reach the merits of the Ackerschotts' constitutional challenge of the cap on noneconomic damages. Neither party is entitled to costs or attorney fees on appeal.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.