# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47196

DUANE M. SIERCKE, )
)
  Plaintiff-Counterdefendant- )
  Respondent, )
)   **Boise, August 2020 Term**
v. )
)   **Filed: November 20, 2020**
ANALLI S. SIERCKE, )
nka ANALLI S. SALLA, )   **Melanie Gagnepain, Clerk**
)
  Defendant-Counterclaimant- )
  Appellant. )
)

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Benjamin R. Simpson, District Judge.

The decision of the district court is <u>affirmed in part, reversed in part, and remanded for further proceedings.</u>

Bolton Law, PLLC, Coeur d'Alene, for Appellant. Katherine J. Bolton argued.

Ian D. Smith Law, PLLC, Coeur d'Alene, for Respondent. Ian D. Smith argued.

_____

BURDICK, Chief Justice.

This case arises out of the aftermath of a domestic dispute between Analli Salla and Duane Siercke and concerns whether any privilege from defamation claims applies to statements made to law enforcement. Salla appeals from the district court's entry of judgment and denial of her motion for a new trial. After misdemeanor domestic battery charges against him were dropped, Siercke filed a civil action against Salla alleging, among other things, defamation. Following a five-day trial, a jury awarded Siercke $25,000.00 on his defamation claim. Salla filed a motion for a new trial, contending the district court erred in instructing the jury on defamation per se because her statements to law enforcement were privileged and her statements did not allege that Siercke had committed a felony. The district court denied the motion and Salla timely appealed.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The domestic dispute that lead to these proceedings unfolded on March 7, 2016. At that time, Salla and Siercke were married and living together with their two children, ages four and seven. That evening, after Siercke arrived home from work, Salla requested that the couple go to an upstairs bedroom out of their children's earshot to discuss divorce and proposed child custody arrangements. What began as a civil discussion turned into a heated argument when Siercke began to suspect that Salla was surreptitiously recording their conversation and feigning a fearful reaction to him. The conflict escalated and, although Siercke disputes that any physical contact occurred, both parties called 9-1-1 and requested assistance at the residence.

The Kootenai County Sheriff's Office dispatched two deputies to the scene, and only one, Deputy Ballman, testified at trial concerning Salla's statements. On arrival, the deputies first spoke with Siercke outside the home. Deputy Ballman recalled that Siercke was calm and collected but insisted that Salla was attempting to frame him for domestic violence. Siercke maintained that no physical contact had occurred between him and Salla. After a brief interview with Siercke, Deputy Ballman went inside the house and proceeded to interview Salla.

In contrast, Deputy Ballman recalled that Salla "was crying, very emotionally distraught … [and] had a hard time articulating pretty much anything." Salla told Deputy Ballman that Siercke was "an extremely controlling individual" and relayed some details about prior incidents of his controlling behavior. Deputy Ballman proceeded to ask Salla what had occurred that evening and Salla responded by saying, "[Siercke] poked me" and that he had grabbed her ear and earring. Deputy Ballman noticed that Salla was bleeding from her earlobe and brought that to her attention. Salla responded with surprise and said "[i]t doesn't seem very bad." Deputy Ballman asked if both of Salla's earrings had been pulled out or only one, to which Salla replied "I think it was just one." However, Deputy Ballman noted that Salla's other earlobe was bleeding as well, to which Salla reacted with surprise again. In addition to hearing her version of events that evening, Deputy Ballman asked follow-up questions concerning any history or pattern of domestic violence by Siercke towards Salla. Salla reiterated that she believed Siercke was a controlling individual, she wanted out of her relationship with him, and that Siercke was very likely to become violent again.

Deputy Ballman also asked if Salla had made an audio recording of their conflict. At first, Salla was reticent to share this recording because she claimed she did not want Siercke to

2

get in trouble but she eventually allowed Deputy Ballman to listen to it. After he listened to the recording, Deputy Ballman interviewed Salla and Siercke's children, who confirmed that they had heard their parents loudly fighting and Salla saying "no."

Following his interview with the children, Deputy Ballman decided to arrest Siercke for felony domestic battery in the presence of a child.[1] Deputy Ballman testified that he decided to arrest Siercke based on his training in responding to domestic disputes and "a combination of the interviews . . . with Mr. Siercke and Miss [sic] Salla combined with the physical evidence of her ears having been torn and bleeding, and then combined with that recording and the presence of the children in the house." Following his arrest, the Kootenai County Prosecutor's Office charged Siercke with misdemeanor domestic battery in the presence of a child by criminal complaint.[2] For reasons undisclosed in the record, the charges against Siercke were dismissed in June of 2016.

In addition to her statements to law enforcement officers at the scene, Salla later told Veronica Semko, a counselor at her oldest son's elementary school, about the altercation with her husband. Semko recalled that Salla told her that Siercke "pulled her hair and caught her earring and there was blood." In response, Semko referred Salla to social services in the community and suggested she apply for a job at the elementary school.

Nearly a year after police responded to the domestic dispute at the home, Siercke filed a civil complaint against Salla, claiming slander, abuse of process, and wrongful civil proceedings. Salla answered and counterclaimed for battery and intentional infliction of emotional distress. She later amended her answer to include affirmative defenses of res judicata and collateral estoppel.

Following a five-day trial, the jury returned a verdict in favor of Siercke, but only on his slander claim, which was pursued on a theory of slander or defamation per se. Prior to trial, Salla had filed a written objection to Siercke's proposed jury instructions on defamation per se, claiming that her statements to law enforcement were subject to an absolute litigation privilege and could not form the basis of a defamation action. Salla also filed a written objection arguing

---

[1] The duty report and probable cause affidavit both state that Siercke was arrested for felony domestic battery with a traumatic injury in the presence of child under Idaho Code section 18-918(b)(4). There is no Idaho Code section 18-918(b)(4); instead, it is likely that Siercke was arrested for suspected violation of Idaho Code section 18-918(2)(a) and -918(4).

[2] Idaho Code section 18-918(3)(b) and -918(4).

3

that Siercke's proposed defamation per se instruction was inappropriate on the facts of the case and the district court should deliver the standard defamation instruction instead.

Salla moved for a new trial after the verdict in favor of Siercke's defamation claim. In her motion, Salla reasserted her previous objections to Siercke's defamation per se instructions, including her assertion of absolute privilege and the requirement that a defamation per se instruction be based on a felony allegation. The district court denied Salla's motion for a new trial, finding an absolute litigation privilege did not apply to statements made to law enforcement officers and that Salla had accused Siercke of a felony because he was initially arrested for a felony offense and only later had that charge dropped to the misdemeanor. Salla timely appealed.

## II.     ISSUES ON APPEAL

1. Whether Salla's statements to law enforcement officers are entitled to an absolute litigation privilege.

2. Whether Salla's statements to law enforcement officers are, in the alternative, entitled to a qualified privilege.

3. Whether the district court erred in instructing the jury on defamation per se.

## III.     STANDARD OF REVIEW

This Court applies a de novo standard of review to questions of law. *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019). Whether a jury instruction is correct is a question of law that this Court freely reviews. *Smith v. Mitton*, 140 Idaho 893, 899, 104 P.3d 367, 373 (2004) (citing *Clark v. Klein*, 137 Idaho 154, 156, 45 P.3d 810, 812 (2002)). "The standard of review of whether a jury instruction should or should not have been given, is whether there is evidence at trial to support the instruction[.]" *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 234, 457 P.3d 875, 886 (2020) (quoting *Clark*, 137 Idaho at 156, 45 P.3d at 812) (quotations omitted). "A trial court is under the duty to instruct upon every reasonable theory of the litigants that is recognized by law as presenting a basis of a claim of relief or a defense thereto, where such theory finds support in the pleadings and the evidence." *Id.* (quoting *Hodge v. Borden*, 91 Idaho 125, 136, 417 P.2d 75, 86 (1966)) (quotations omitted). Ultimately, for issues relating to jury instructions, this Court's standard of review "is limited to a determination of whether the instructions, as a whole, fairly and adequately present the issues and state the law." *Smith*, 140 Idaho at 899, 104 P.3d at 373 (quoting *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 882, 42 P.3d 672, 675 (2002)).

4

# IV.  ANALYSIS

On appeal, Salla argues that the district court erred because (1) an absolute privilege should apply to statements made to law enforcement; (2) in the alternative, a qualified privilege should apply to reports to law enforcement; and (3) that defamation per se instructions were not appropriate because her reports to law enforcement resulted in a misdemeanor, not a felony, charge against Siercke. In response, Siercke argues that Salla has not preserved the issue of qualified privilege nor provided an adequate record on appeal for any of her assigned errors. On the merits, Siercke argues: (1) that the absolute litigation privilege does not apply to reports to law enforcement because judicial proceedings have not yet begun; (2) if a qualified privilege does apply, malice can be inferred from the circumstances in this case; and (3) that Salla's statements to law enforcement and a school counselor about him were sufficient to justify a defamation per se instruction. For the reasons set forth below, we hold that an absolute litigation privilege does not extend to reports made to police officers, that Salla has not preserved the issue of qualified privilege for appeal, and that the district court erred in instructing the jury on defamation per se.

## A. This Court's holding in *Berian v. Berberian* addresses the privilege applicable to statements made to law enforcement.

At the time of Salla's appeal, this Court had not yet addressed what privilege, if any, applied to statements made to law enforcement officers. Both Salla and Siercke make persuasive arguments concerning what privilege should be adopted by this Court. However, these arguments are now moot as this Court has since delivered its opinion in *Berian v. Berberian*, No. 47122, 2020 WL 6387153 (2020), which was argued the same term as this matter and presented the same issue.

In *Berian*, we discussed the two schools of thought regarding what privilege applies to statements made to law enforcement. *Id.* at *7–8. The minority rule is that such statements are absolutely privileged from defamation actions. *Id.* at *8. In contrast, the majority rule is that statements made to law enforcement enjoy a qualified privilege from defamation actions, which can be lost through abuse, such as when statements are made with malice or in bad faith. *Id.* We noted the "two important and competing interests considered by the courts that have addressed the issue." *Id.* On one hand, weighing in favor of an absolute privilege is the interest in "encouraging free and unhindered communications to law enforcement authorities necessary to facilitate the investigation and prosecution of crimes." *Id.* (quoting *Ledvani v. Cerasani*, 146

5

P.3d 70, 74 (Ariz. Ct. App. 2006)). On the other, we noted that "persons against whom allegations have been levied have an interest in protecting their reputation from defamation and being wrongly accused of criminal conduct." *Id.* (citing *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)). Ultimately, this Court held that a qualified privilege struck the appropriate balance between protecting those who seek to report criminal conduct to law enforcement and the countervailing interest in remedying the "potentially disastrous consequences that may befall the victim of a false accusation of criminal wrongdoing." *Id.* (quoting *Gallo v. Barile*, 935 A.2d 103, 111 (Conn. 2007)).

Having determined that our holding in *Berian* answered the question of what privilege applies to statements made to law enforcement, we turn our attention to the impact of that decision to this matter. Salla contends that the district court erred in not delivering jury instructions concerning the absolute privilege. Siercke argues that Salla has not provided an adequate record for appellate review on the issue.

The appealing party has the burden of ensuring that the appellate court is provided with a sufficient record for review. *Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003). An adequate record will reflect not only the existence of an issue below, but also the lower court's reasoning and basis for a decision on that issue. *See State v. Mowrey*, 128 Idaho 804, 805, 919 P.2d 333, 334 (1996). This Court refuses "to speculate as to the reasons for the district court's decision[.]" *Id.* Instead, when an appellant fails to provide a record that is adequate for review, this Court will presume that the missing portions of the record support the district court's decision. *Turcott v. Estate of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019) (citations omitted).

Here, Salla did not raise absolute privilege in her original answer or her amended answer, choosing instead to raise the defenses of res judicata and collateral estoppel. However, Salla did argue in her pre-trial objections to Siercke's proposed jury instructions that her statements were protected by an absolute privilege. Specifically, Salla wrote: "[d]efendant's statements in the context of the domestic violence judicial proceedings are subject to an absolute litigation privilege." Not only was the issue of absolute privilege raised, but the record on appeal is sufficient to permit this Court to review the merits of Salla's absolute privilege argument.

Although the portions of the trial transcript supplied by Salla to this Court do not disclose the basis for the district court's decision at trial concerning her absolute privilege argument, the

6

district court's order on Salla's motion for a new trial provides its reasoning on this issue. Specifically, the district court ruled that an absolute privilege did not apply to Salla's statements to law enforcement because (1) her statements "were not necessarily intended to institute a prosecution or judicial proceeding"; and (2) her statements were not made during the course of a judicial proceeding because they were not communicated to a prosecutor, attorney, the court, or an official clothed with quasi-judicial powers. Given this reasoning, this Court is not left to speculate as to why the district court did not instruct the jury on absolute privilege and, instead, may review this decision on the merits. And, since this Court in *Berian* adopted a qualified privilege for statements made to law enforcement, the district court did not err in declining to instruct the jury on an absolute privilege.

### B. The issue of qualified privilege has not been preserved on appeal.

In addition to her absolute privilege arguments, Salla contends that the district court erred in determining that a qualified privilege did not extend to her statements to law enforcement. Siercke responds by arguing that (1) Salla has raised this issue for the first time on appeal and (2) that even if a qualified privilege applies, malice can be inferred from the circumstances of Salla's statements to law enforcement. Although Salla's arguments concerning a qualified privilege are in accord with this Court's holding in *Berian*, we cannot consider the import of that decision to this case because Salla has not preserved the issue for appeal.

It is axiomatic that this Court will not consider issues raised for the first time on appeal. *Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 327, 429 P.3d 855, 868 (2018). A party must raise both the issue and their position on that issue before the trial court for this Court to review it. *Eagle Springs Homeowners Assoc., Inc. v. Rodina*, 165 Idaho 862, 869, 454 P.3d 504, 511 (2019) (citing *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)).

Salla has offered three arguments as to why the issue of qualified privilege has been preserved on appeal: (1) that her objection to proposed jury instructions for defamation raising the issue of absolute privilege implicitly included the issue of qualified privilege; (2) that her request to have the jury instructed with the standard defamation instruction, which includes an element of knowing falsity, implicated qualified privilege because it required a showing of malice; and (3) that she requested the jury be instructed on malice in her objections to Siercke's proposed jury instructions. We address each argument in turn.

1. Attempting to invoke an absolute privilege defense does not necessarily implicate the issue of qualified privilege because the two issues are distinct.

Salla argues that the issue of qualified privilege has been preserved on appeal because the district court, in denying her request for an instruction on absolute litigation privilege, should have necessarily analyzed the issue of qualified privilege as a "lesser privilege." We find this argument unavailing because an absolute privilege and a qualified privilege vary by kind, not degree, so that implication of one does not include the other as a matter of course. Accordingly, since Salla did not invoke or otherwise argue that a qualified privilege applied before the district court, this Court may not now consider this issue.

A party may refine issues that they have raised below with additional legal arguments so long as the substantive issue and the party's position on that issue remain the same. *Ada Cnty. Highway Dist. v. Brooke View, Inc.*, 162 Idaho 138, 142 n.2, 395 P.3d 357, 361 n.2 (2017). A distinction exists between a refined issue, appropriate for review, and a new issue, unfit for consideration. *See State v. Gonzalez*, 165 Idaho 95, 98–99, 439 P.3d 1267, 1270–71 (2019). This Court can hear refined legal arguments regarding an issue heard and decided by the court below, but in fairness to the district court and the opposing party, we cannot usurp the district court's role by deciding new legal issues in the first instance. *Id.* In other words, "[a] groomed horse is expected on appeal, but a different horse is forbidden." *Id.* at 99, 439 P.3d at 1271.

An absolute privilege is more akin to an immunity than a privilege because it adheres by virtue of the status of the speaker. *See* Restatement (Second) of Torts div. Five, ch. 25, topic 2, tit. B, intro. note (1977). The absolute privilege is appropriate where the publisher of potentially defamatory material is, for example, a party to a judicial proceeding, a lawyer involved in that proceeding, or the judicial officer presiding over the proceeding. *See, e.g.*, *Dickenson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 434 P.3d 1275 (2019) (statements made in federal court complaint absolutely privileged); *Taylor v. McNichols*, 149 Idaho 826, 243 P.3d 642 (2010) (lawyer's conduct during proceeding protected by absolute privilege); *Richeson v. Kessler*, 73 Idaho 548, 255 P.2d 707 (1953) (letter written by attorney in proceeding to judge of that proceeding absolutely privileged).

In contrast, a qualified privilege is not status based, but arises out of certain circumstances and conditions which, as a matter of public policy, demand some protection for the publisher of potentially defamatory material. Restatement (Second) of Torts, div. Five, ch. 25, topic 2, tit. B, intro. note (1977). For example, we have found a qualified privilege applies to

parties who share a common interest like a business relationship.[3] *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 892, 522 P.2d 1102, 1113 (1974). And, in determining if a qualified privilege applies, "whether a given set of facts constitutes a privileged occasion, in regard to liability for defamation, is a matter of law for . . . the court." *Id.* (citation and internal quotations omitted). A person asserting the qualified privilege as a defense must show both that the potentially defamatory material was published under circumstances that require privilege and that the privilege was not abused. Restatement (Second) of Torts § 593 (1977).

Here, Salla neither raised the issue of qualified privilege, nor articulated her position on the issue to the district court. Instead, Salla consistently argued below that her statements to law enforcement were absolutely privileged because they were made during the initial steps of a judicial proceeding. Having heard arguments on the issue of absolute privilege, the district court made a ruling that this Court could review on appeal; however, the same cannot be said of qualified privilege. Put simply, we cannot review the ruling of a district court on an issue it was never asked to rule upon. Thus, the mere invocation of the absolute privilege below does not allow this Court to make a determination on the separate but related issue of a qualified privilege when the district court neither heard argument on the issue nor expressed any opinion on it. As such, we cannot say the district court erred in failing to instruct the jury on a qualified privilege because it was never asked to in the first place.

2. The similarity between the intent requirement of an ordinary defamation claim and the intent requirement of a qualified privilege is not enough to preserve the issue for appeal.

Salla next argues that because she objected to Siercke's proposed defamation instructions and requested the standard defamation instruction, Idaho Civil Jury Instruction 4.82, which includes an element of publishing knowingly false information, she preserved the issue of qualified privilege for appeal. The argument here is that either under a theory of qualified privilege, or under the standard defamation instruction, Siercke would need to show that Salla acted with malice in order to prevail on his defamation claim, and thus a qualified privilege should have been considered. We are unpersuaded by this argument because it confuses the similarity in intent standards with having preserved a distinct legal issue.

---

[3] And, as explained in Section A, we have adopted a qualified privilege for statements reporting criminal activity to law enforcement based, in part, on the public policy of protecting those who report suspected criminal activity. *Berian v. Berberian*, No. 47122, 2020 WL 6387153 (2020).

The standard jury instruction for defamation requires a plaintiff to prove six elements, four of which are pertinent here:

(1) The defendant communicated information concerning the plaintiff to others; and

(2) The information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; and

(3) The information was false; and

(4) The defendant knew it was false, or reasonably should have known that it was false

. . . .

ICJI 4.82. At trial, the jury was instructed as to only the first three elements of defamation. Salla objected to this instruction on the basis that it removed the fourth element of intent from the equation, and if she were afforded a qualified privilege, Siercke would have needed to show that she acted with malice. Salla is correct that both the fourth element of the standard defamation instruction and a defense of qualified privilege require a showing of intent. The standard jury instruction on defamation requires either a knowingly false statement or negligence with respect to the statement's truth. ICJI 4.82. In parallel, a showing of malice requires that the publication of defamatory material be made "in bad faith, without belief in the truth of the matter published, or with reckless disregard of the truth or falsity of the matter." *Barlow*, 95 Idaho at 892, 522 P.2d at 1113. While the two standards share substantial similarities, Salla's argument ignores a critical distinction: both delineate the intent element with respect to separate legal issues. Whether a qualified privilege applies as a defense to a defamation claim is a different question than whether the jury has been properly instructed on the standard elements of a defamation claim. In other words, merely arguing about the standard used to evaluate an element of a claim does not open the door to preserving every issue which may share a similar element on appeal. Instead, to preserve an issue for appeal, a party must raise that issue and its position on the issue to the district court. *See Rodina*, 165 Idaho at 869, 454 P.3d 511 (citing *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)).

3. Salla's requested malice instruction was not related to her defamation arguments.

Finally, Salla argues that she specifically requested that the jury be instructed on malice and that, in requesting a malice instruction, she preserved the issue of qualified privilege for review. This argument is unpersuasive.

10

To the extent that Salla objected to Siercke's proposed jury instructions and requested a malice instruction, it was concerning Siercke's proposed instruction on the definition of malice as an element of his wrongful civil proceedings claim. Salla did not request a malice instruction for the defamation claim and cannot shoehorn her objection to a different claim into an argument that she preserved the issue of qualified privilege for appeal.

In sum, we conclude that Salla has not preserved the issue of whether the district court erred in not instructing the jury that statements to law enforcement enjoy a qualified privilege. The qualified privilege is a distinct defense and was not invoked by Salla before the district court. Consequently, we may not consider it on appeal because the district court was never asked to rule on the issue.

## C. The district court erred in giving a defamation per se instruction because the question of whether Salla's statements were defamatory per se should have been left to the jury.

As her final issue on appeal, Salla argues that the district court erred in delivering a defamation per se instruction because her statements about Siercke did not allege a felony. Siercke, in response, asserts that the record on appeal is insufficient for review and that, on the merits, a defamation per se instruction was appropriate because Salla's statements imputed criminal conduct to him. We agree with Salla's interpretation of our defamation per se precedent and conclude that the district court erred in giving a defamation per se instruction because whether Salla's statements were defamatory per se should have been left to the jury to decide.

As a preliminary matter, we find that the record is sufficient for review. Salla contends that she argued her objection to the defamation per se instruction at a jury instruction conference before the district court. There is no record of any jury instruction conference occurring, let alone a record of the contents of that conference. We pause to make clear that counsel have a responsibility to preserve a record of the proceedings below, even when there are discussions with the court off-the-record. "In preserving a record in the trial court, we caution counsel not to rely on discussions, arguments or rulings taking place in chambers, hallways or at the side bar. Once back on the record, counsel should remember to place into the record any adverse ruling in order to properly preserve it for appeal." *McKay Constr. Co. v. Ada Cnty.*, 126 Idaho 923, 925 n.1, 894 P.2d 156, 158 n.1 (Ct. App. 1995). Despite this, Salla repeated her argument that a defamation per se instruction must be supported by a felony allegation in her motion for a new trial. The district court, in turn, ruled on this issue and we may now review that decision.

11

Initially, we note that in the context of a case where a qualified privilege is implicated, that privilege serves a gatekeeping function for defamation claims. *See Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 891–92, 522 P.2d 1102, 1112–13 (1974). Where the privilege has not been lost through abuse, such as malice or bad faith, there is no liability for defamatory statements. *Id.* In contrast, if malice can be shown, and the privilege is lost, a plaintiff may pursue a defamation claim according to any applicable theory, such as defamation per se. *See id.* (determining that a jury had sufficient evidence to conclude that publication of defamatory material was done with malice and thus could consider whether allegations of criminal conduct were defamatory per se).

On the merits, to succeed on a defamation claim, a plaintiff is required to prove "that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Elliot v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (2016) (quoting *Clark v. Spokesman-Review*, 144 Idaho 427, 430, 163 P.3d 216, 219 (2007)) (internal quotations omitted). "A defamatory statement is one that tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Id.* (quoting *Defamatory*, Black's Law Dictionary 506 (10th ed. 2014)) (internal quotations and alterations omitted). Statements that rise to the level of defamation per se do not require proving special damages. *Irish v. Hall*, 163 Idaho 603, 607, 416 P.3d 975, 979 (2018). Pertinent here, we have held that a statement is defamatory per se when it "impute[s] conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute and of such kind as to involve infamous punishment (death or imprisonment) or moral turpitude conveying the idea of major social disgrace." *Barlow*, 95 Idaho at 890, 552 P.2d at 1111 (quoting C*inquanta v. Burdett*, 388 P.2d 779, 780 (Colo. 1963)) (quotations omitted).

To determine whether a statement is defamatory, the assertion "must be read and construed as a whole; the words used are to be given their common and usually accepted meaning and are to be read and interpreted as they would be read and understood by the persons to whom they are published." *Gough v. Tribune-Journal Co.*, 75 Idaho 502, 508, 275 P.2d 663, 666 (1954). "In determining whether a statement is defamatory per se, this Court has stated, 'if the language used is plain and unambiguous, it is a question of law for the court to determine whether it is libelous per se, otherwise it is a question of fact for the trier of fact.'" *Irish*, 163

12

Idaho at 608, 416 P.3d at 980 (quoting *Weeks v. M-P Publ'ns, Inc.*, 95 Idaho 634, 636, 516 P.2d 193, 195 (1973)).

Salla cites to our holding in *Irish v. Hall* for the proposition that a defamation per se instruction requires that the conduct alleged amounts to a felony. As such, she contends that since Siercke was only charged with misdemeanor domestic battery under Idaho Code section 18-918(3)(b), the district court erred in giving a defamation per se instruction. In *Irish*, we quoted *Barlow v. International Harvester Company* and held that statements are actionable as defamation per se when they (1) "impute 'conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute'" and (2) allege a crime "'of such kind as to involve infamous punishment (death or imprisonment) or moral turpitude conveying the idea of major social disgrace.'" 163 Idaho at 607, 416 P.3d at 979 (quoting *Barlow*, 95 Idaho at 890, 552 P.2d at 1111). Salla reads the first prong of this test to require a felony allegation. We agree and take this opportunity to update our articulation of this test to conform to developments in Idaho's criminal procedure.

At the time *Barlow* was decided, Idaho law contemplated three categories of offenses: felonies, indicatable misdemeanors, and misdemeanors. *See Gibbs v. Shaud*, 98 Idaho 37, 39, 557 P.2d 631, 633 (1976). An indictable misdemeanor was an offense which was not a felony, but outside the jurisdictional limits of justices of the peace and probate courts. *Id.* As such, as the name implies, indictable misdemeanors fell under the indictment and information requirements of Idaho Constitution Article I, Section 8. *See* Idaho Const. art. I, § 8 ("No person shall be held to answer for any felony or criminal offense of any grade . . . except . . . in cases cognizable by probate courts or by justices of the peace[.]"); *Collins v. Crowley*, 94 Idaho 891, 895, 499 P.2d 1247, 1251 (1972) (analyzing Idaho Constitution article I, section 8 and stating "[i]t is the conclusion of this Court that the framers of our constitution intended that the line of demarcation be draw between cases which can be considered as misdemeanors . . . and other more serious crimes, i.e. felonies and criminal offenses of any grade, i.e. indictable misdemeanors."). So, when this Court stated in *Barlow* that statements are actionable as defamation per se when they "impute 'conduct constituting a criminal offense chargeable by indictment or information,'" that phrase encompassed both felonies and indictable misdemeanors. *Barlow*, 95 Idaho at 890, 522 P.2d at 1111.

However, Idaho no longer recognizes indictable misdemeanors, and felonies are the only criminal offense chargeable by indictment or information. *See Gibbs*, 98 Idaho at 40, 557 P.2d at 634 ("Insofar as the so-called indictable misdemeanors are concerned, we conclude that there is no constitutional infirmity in allowing prosecution of such crimes to proceed . . . without . . . indictment or . . . a preliminary hearing."); *see also* I.C.R. 7(a) ("All felony offenses must be prosecuted by indictment or information."). Accordingly, the first prong of the test as laid out in *Barlow*, and subsequently cited by this Court in *Irish*, applies only to felonies. And, as a consequence, a key portion of the second prong of the test in *Irish* and *Barlow* is now redundant. Specifically, the portion of that test which requires the criminal conduct alleged "involve infamous punishment (death or imprisonment)" because that is, by definition, a felony. I.C. § 18-111 ("A felony is a crime . . . punishable with death or by imprisonment[.]"). Thus, under the test as it currently stands, a statement is defamatory per se when it (1) imputes that someone committed a felony, and (2) that the crime imputed was a felony or a crime of moral turpitude.

Because the test articulated in *Barlow* and *Irish* is redundant in light of developments in Idaho's criminal procedure, we take this opportunity to update Idaho law and adopt what we believe to be the clearer, more contemporary approach of the Second Restatement of Torts:

> One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be
>
> (a) punishable by imprisonment in a state or federal institution, or
>
> (b) regarded by public opinion as involving moral turpitude.

Restatement (Second) of Torts § 571 (1977).

Under this test, the proper focus of a defamation per se inquiry is the nature of the conduct imputed to the plaintiff and not the technicalities of a charging document, if any. If criminal conduct is imputed, and that conduct amounts to either a crime punishable by imprisonment or a crime of moral turpitude, the allegedly defamatory remarks are actionable as defamation per se. Whether a crime is punishable by imprisonment is clear from the statutes defining the crime, but the question of whether a crime is one of moral turpitude is more complex.

In answering that question, we again find the Second Restatement approach informative. Under the Restatement, moral turpitude is "in general, shameful wickedness, so extreme a

14

departure from ordinary standards of honesty, good morals, justice or ethics as to be shocking to the moral sense of the community." Restatement (Second) of Torts § 571 cmt. g (1977). Among those crimes which, regardless of punishment, may imply moral turpitude, the Restatement inartfully lists "wife beating." *Id.* Given the emphasis on community standards, it follows that whether a crime is one of moral turpitude is a question best left to the jury in most instances.

Turning to the issues in this case, we determine that the district court erred in taking the question of defamation per se from the jury because Salla's statements, viewed on their own, do not necessarily accuse Siercke of a felony or crime of moral turpitude. The district court did not undertake an analysis of whether Salla's statements were plain and unambiguous; rather, it assumed since Siercke had been arrested for felony domestic battery and charged with misdemeanor domestic battery that Salla's statements amounted to a felony accusation. What's more, the fact that the district court pointed out Siercke's conduct could have been charged as either a felony or misdemeanor, belies its conclusion that Salla's statements amounted to a clear and unambiguous felony allegation. Indeed, this ambiguity is underscored by the divergent conclusions of the responding officers and prosecutor. Looking at the same set of facts, officers arrested Siercke for felony domestic battery but prosecutors only charged him with misdemeanor domestic battery. And, in any event, looking to the ultimate law enforcement or prosecutorial response, which is informed by an assessment of all the facts available to them, flips the defamation inquiry on its head.

Instead, the focus of any defamation action is the content of the statements made by the defendant. Thus, where a plaintiff claims that a statement is defamatory per se because it imputes criminal conduct, a court must first look to the actual statements made and not the ultimate law enforcement response. For example, if one were to make a false report to law enforcement that another had committed a felony, but law enforcement found insufficient evidence to corroborate the allegation and did not make an arrest, the original statement is still defamatory per se. In the same vein, if someone makes a statement to law enforcement which is subsequently used in combination with other evidence to form an officer's probable cause determination that a felony has occurred, that statement, by itself, is not necessarily defamatory per se even though it contributed to a felony arrest. Indeed, in the context of domestic abuse, victims are often under considerable pressure not to come forward with clear accusations of criminal conduct and, instead, law enforcement are left making inferences that abuse has occurred from a variety of

15

evidence beyond the content of the victim's statements. Viewed in this light, it is especially important for a court hearing a defamation claim against an alleged victim of domestic abuse to look principally at the victim's statements and not allow the ultimate conclusions of a law enforcement investigation, if any, to dictate the result. This is not to say that law enforcement response is irrelevant, as the eventual response informs how law enforcement understood the *statements* made to them. In short, the analysis of whether a statement is defamatory per se is more nuanced than a formulaic determination that if a felony arrest was effectuated, then felony conduct was alleged.

Here, Deputy Ballman testified that he made a probable cause determination to arrest Siercke for felony domestic battery in the presence of a child based not only on Salla's statements, but also on his interview with Siercke, the audio recording of the altercation, the presence of children in the home, and the physical evidence of blood coming from Salla's earlobes. So, while Salla's statements to Deputy Ballman may have contributed to a probable cause determination that Siercke committed a felony, that information cannot be used to influence the determination of whether Salla's statements, viewed on their own, constituted a plain and unambiguous accusation of a felony or crime of moral turpitude. On that note, the record shows that Salla told Deputy Ballman that Siercke had "poked" her, grabbed her ear, and engaged in controlling behavior in the past. Salla's statement to Veronica Semko, however, is more concrete. Semko testified that Salla had told her that Siercke grabbed her hair and ear and that there was blood. Yet, by itself, this is not a plain and unambiguous allegation of felony domestic battery in the presence of a child. In other words, the district court erred in giving a defamation per se instruction because the question should have been left to the jury to decide if Salla's statements amounted to a felony allegation or a crime of moral turpitude.

## V.    CONCLUSION

For the reasons stated above, we affirm the district court's decision refusing to apply an absolute litigation privilege to the statements made by Salla to law enforcement officers. Further, we cannot address whether the district court erred in not giving a qualified privilege instruction because that issue was never raised below. Additionally, we hold that the district court erred in delivering a defamation per se instruction and accordingly reverse the district court's final judgment and order on Salla's motion for a new trial. The case is remanded for further proceedings consistent with this opinion.

16

Inasmuch as both parties have prevailed in part on appeal, we cannot conclude Salla has pursued this appeal frivolously, unreasonably, or without foundation. Thus, Siercke is not entitled to an award of attorney's fees under Idaho Code section 12-121. We award neither party costs.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**