IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 48693

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, June 2021 Term |
| | ) | |
| v. | ) | Opinion Filed: September 27, 2021 |
| | ) | |
| ANDREW REED WILSON, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Robert C. Naftz, District Judge.

The order of the district court is affirmed.

Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant State of Idaho. Kenneth K. Jorgensen argued.

Eric D. Frederickson, State Appellate Public Defender, Boise, for respondent Andrew Reed Wilson. Andrea Reynolds argued.

—————————————

STEGNER, Justice.

In December 2018, a Jack-in-the-Box employee suspected a "drunk driver" was in the restaurant's drive-through line and reported this suspicion to law enforcement. An officer arrived on the scene and reported an odor of alcohol emanating from the passenger side of the vehicle (which was then occupied by a passenger), as well as empty alcohol containers on the floor near the vehicle's passenger. The officer directed the driver, later identified as Andrew Wilson, to park the car. Wilson exited the vehicle. After noticing the odor of alcohol coming from Wilson, the officer began conducting field sobriety tests. The officer interpreted Wilson's results as presenting signs of impairment. The officer then arrested Wilson for driving under the influence (DUI). A warrant for a blood draw was ultimately obtained after Wilson refused to submit to a breath test. The result of the blood draw conducted at the Pocatello Police Department reported a blood alcohol content of 0.192 percent.

Wilson was charged with felony DUI based on two prior DUI convictions within the previous ten years. Wilson moved to suppress all evidence obtained as a result of his initial

1

detention, arguing that the officer did not have reasonable suspicion to detain him in the restaurant parking lot. The district court granted Wilson's motion and dismissed the charge against him with prejudice. The State appealed this decision to the Idaho Court of Appeals, which reversed the district court. *See State v. Wilson*, No. 47275, 2020 WL 4876845 (Idaho Ct. App. Aug. 20, 2020). This Court granted Wilson's timely petition for review. For the reasons set out below, we affirm the district court's decision to suppress.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2018, at approximately 2:30 a.m., an employee at Jack-in-the Box phoned the non-emergency number of the Pocatello police to report that he suspected a "drunk driver" was in the drive-through line at the fast-food restaurant. The employee testified that a purple car in the restaurant's drive-through line contained several occupants who were "really laughing," as they placed their orders, which, according to the employee, "is usually a sign of something." The employee further testified that after informing the vehicle's occupants of a ten to fifteen minute wait time for their food, someone in the vehicle said the wait was fine because there was alcohol in the car, which prompted the employee to call the police.

Officer Ryan Malone with the Pocatello Police Department arrived several minutes later and approached a vehicle from the passenger side while it was still stationary in the drive-through line. The officer had no prior driving pattern of the vehicle. The vehicle the officer approached "was the only car in the parking lot that matched the possible description [provided by the employee of the Jack-in-the-Box]"; however, the Officer testified there was no purple car. Rather, the Officer first approached a car maroon in color, and he didn't know whether the car he approached was the same that had been reported by the Jack-in-the-Box employee. Officer Malone first spoke to the driver through the passenger-side window, and informed him why he was there: "to perform a welfare check, and that the employees of the Jack-in-the-Box felt that the occupants may be possibly intoxicated." As the officer was speaking to the driver through the passenger side of the vehicle, he observed "four empty 32-ounce beer cans on the passenger side floor at the feet of [the passenger]." The officer then directed the driver to drive his vehicle into the parking lot so the officer could verify that Wilson was not intoxicated.

The driver, later identified as Andrew Wilson, parked the car and exited the vehicle in compliance with Officer Malone's commands. The officer testified that when Wilson approached him toward the back of the vehicle, he "could smell the odor of intoxicating beverage coming from

his breath and person." The officer further testified that when he "began checking his eyes for nystagmus,[1] [he] immediately observed it."

At that point, the officer began to formally conduct field sobriety tests on Wilson. The officer asked Wilson if he had consumed any alcohol, to which Wilson admitted that he had consumed four beers and one shot within the past six hours. Wilson failed the nystagmus test, which measured his eye movements both horizontally and vertically. The officer also observed that Wilson's eyes were "glassy." Wilson satisfactorily completed two additional field sobriety tests, but the officer placed him under arrest for suspicion of driving under the influence.

Officer Malone informed Wilson that he would be transported to the police station and offered a breathalyzer test. Wilson refused to submit to a breathalyzer test multiple times, so the officer applied for a warrant for a blood draw. The warrant was issued, and a blood sample was taken from Wilson at the Pocatello Police Department. The results of the blood draw showed that Wilson had a blood alcohol content (BAC) of 0.192 percent.

The State filed a criminal complaint against Wilson, charging him with felony DUI in violation of Idaho Code sections 18-8004 and 18-8005(6) based on two prior DUI convictions within the preceding ten years. A preliminary hearing was held, and the magistrate court found probable cause to bind Wilson over to district court. Wilson filed a motion to suppress, arguing that he had been unlawfully detained in violation of the Fourth Amendment of the United States Constitution and Article 1, section 17 of the Idaho Constitution. The State did not file a response to Wilson's motion. A hearing on the motion to suppress was held, and the district court requested further briefing from Wilson and responsive briefing from the State.

Wilson argued that he had been seized without reasonable suspicion in violation of his Fourth Amendment rights. Wilson asserted that Officer Malone did not have reasonable suspicion to detain him because Wilson initially denied consuming alcohol, the officer did not see an erratic driving pattern, and the empty beer cans were in front of the feet of the passenger in the vehicle. Wilson further noted that the officer failed to verify with the restaurant employee that he was investigating the correct vehicle and was instead acting on a "hunch." Wilson concluded by

---

[1] Nystagmus is defined as "rapid involuntary movements of the eyes," and the horizontal gaze nystagmus test is commonly used by law enforcement to determine whether someone is impaired. *Horizontal Gaze Nystagmus*, FIELDSOBRIETYTESTS.ORG, http://www.fieldsobrietytests.org/horizontalgazenystagmus.html.

arguing that the fruit of the poisonous tree doctrine operated to exclude all evidence obtained as a result of the unlawful detention.

In response, the State first argued that Officer Malone's interaction with Wilson began as a consensual encounter. Second, the State argued that the officer was exercising his community caretaking function by performing a welfare check on Wilson and the occupants inside the vehicle. Next, the State contended that "as soon as the defendant exited the vehicle and Officer Malone could smell the odor of alcohol coming from [him] and could see his glassy eyes [the encounter] evolved from a welfare check to a DUI investigation based upon reasonable suspicion given the circumstances." "Once the[] officer had reasonable suspicion," the State continued, "he was allowed to extend the stop into a full DUI investigation to determine whether or not the defendant was operating a motor vehicle while impaired."

The district court entered a Memorandum Decision and Order granting Wilson's motion to suppress. The district court first held that the community caretaking function of law enforcement did not apply to Officer Malone's interaction with Wilson because the officer did not believe that the occupants of the vehicle were in need of immediate assistance.[2] Next, the district court found that the officer detained Wilson when he "instructed him to move his car from the drive through to the restaurant parking lot." The State has not challenged this finding on appeal. Finally, the district court determined that the officer did not have reasonable suspicion to detain Wilson based on the totality of the circumstances. Accordingly, the district court granted Wilson's motion to suppress and dismissed the charge against him with prejudice.

The State timely appealed to the Idaho Court of Appeals, which reversed the district court's decision. *State v. Wilson*, No. 47275, 2020 WL 4876845 (Idaho Ct. App. Aug. 20, 2020). Wilson petitioned this Court for review, which we granted.

## II. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Chernobieff*, 161 Idaho 537, 539, 387 P.3d 790, 792 (2016) (quoting *State v. Lute*, 150 Idaho 837, 839, 252 P.3d 1255, 1257 (2011)). "This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the trial judge's decision." *Gilpin-Grubb v. State*, 138 Idaho 76, 79, 57 P.3d 787, 790 (2002).

---

[2] The State concedes this point on appeal.

4

*Marsalis v. State*, 166 Idaho 334, 458 P.3d 203, 208 (2020).

"Issues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019) (quoting *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017)).

## III.   ANALYSIS

### A.  The State failed to preserve its argument for appeal.

Wilson filed his motion to suppress on January 30, 2019. The State did not submit a responsive motion. A hearing on Wilson's motion was held on April 18, 2019. At the hearing, the State conceded that standing had been established and that the burden had shifted to the State to prove that the stop and seizure of Wilson were reasonable. Both the restaurant employee who reported Wilson and Officer Malone testified on behalf of the State. During his testimony, Officer Malone admitted that because he had approached the vehicle from the passenger side, he could not attribute the odor of alcohol to Wilson because there were other occupants in the car, one of whom was sitting directly between Wilson and him. It was not until Wilson had parked his vehicle and stepped out that Officer Malone attributed an odor of alcohol to Wilson.

At the conclusion of the hearing, the district court instructed the parties to file briefing. In an attempt to narrow the issues briefed, the district court stated that it was primarily interested in the question of when reasonable suspicion arose. Further, the district court stated: "I don't think there's any question; I think the evidence shows that he was detained. There was a show of authority when [Officer Malone] told [Wilson] to move his car to the [parking lot]—I don't think there's any question that he was detained."

Wilson's post-hearing brief argued that he had been detained by the officer without reasonable suspicion when he was ordered to drive into the parking area and park his vehicle, and therefore, all evidence obtained as a result should be suppressed. In response, the State's brief argued that the officer was performing his community caretaking function and performing a welfare check on Wilson that evolved into a DUI investigation. The State argued that the officer had reasonable suspicion to perform a DUI investigation *after* Wilson had parked and exited the vehicle and the officer smelled an odor of alcohol attributable to Wilson. The district court granted Wilson's motion to suppress, finding that Officer Malone had detained Wilson when he ordered him to park the vehicle in the restaurant parking lot. The district court further found that Officer

Malone did not have reasonable suspicion to support this detention. The district court then dismissed the DUI charge against Wilson.

On appeal, the State's opening brief argues that the district court erroneously concluded that the officer did not have reasonable suspicion because the totality of circumstances justified the officer's detention of Wilson. Notably, the State has not challenged the district court's factual finding that Wilson was seized when Officer Malone ordered him to leave the drive-through line and park his car in the restaurant's parking lot. Wilson contends that the State's claim on appeal was not properly preserved below because the State "never argued that [the officer] had reasonable suspicion to seize Mr. Wilson when he first spoke with him in the drive-through." Wilson points out that the State "argued that the stop evolved into a DUI investigation when Mr. Wilson got out of the car because Officer Malone only possessed reasonable suspicion to detain him at that point. On appeal, the State abandons this position and claims Officer Malone possessed reasonable suspicion when he detained him originally."[3] Wilson finally asserts that the State's argument on appeal was "forfeited by the State's implicit concession in the district court that [the officer] did not have reasonable suspicion to detain him when he did."

The State responds, contending that it "specifically argued that the encounter was initially consensual, but '[o]nce [the] officer had reasonable suspicion he was allowed to extend the stop into a full DUI investigation.'" The State asserts that the record shows that it "took the position that the DUI investigation was supported by reasonable suspicion and the district court addressed that position."

We have often reiterated that we will not consider issues not raised in the trial court on appeal. *See Hoskins*, 165 Idaho at 221, 443 P.3d at 235. Refined issues on appeal are acceptable "so long as the substantive issue *and the party's position on that issue* remain the same." *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020) (italics added). "This Court can hear refined legal arguments regarding an issue heard and decided by the court below, but in fairness to the district court and the opposing party, we cannot usurp the district court's role by deciding new legal issues in the first instance." *Id.* at 716, 476 P.3d at 383. Our strict adherence to this rule is supported by common-sense judicial policies, including providing an incentive that will promote

_____

[3] On appeal, the State seeks to change its position and argue that Officer Malone had reasonable suspicion to detain Wilson when he ordered him to drive to the parking lot. The facts belie this argument. If Officer Malone had reasonable suspicion to conclude Wilson was impaired at this juncture, ordering him to drive further would have obviously been contraindicated.

6

the "full development of the relevant facts and law, ensuring fairness to the opposing party, and protecting the judicial system's interests in efficiency and finality." *State v. Rodriguez*, 166 Idaho 848, 850, 465 P.3d 1087, 1089 (2020).

In *Hoskins*, we evaluated our case law regarding our preservation jurisprudence, analyzing several cases in which a party failed to properly preserve an argument for appeal. *See* 165 Idaho at 223, 443 P.3d at 237. One such case was *State v. Cohagan*, in which the State conceded in the trial court that the defendant had been subjected to an illegal seizure. 162 Idaho at 721, 404 P.3d at 663. Despite its concession, the State then argued on appeal that this Court had to rule on the issue as well. *Id.* We disagreed: "To allow the State to change positions on appeal and argue that the stop was not illegal would sharply cut against our longstanding and recently re-affirmed policy of requiring parties to present their arguments to the court below[.]" *Id.*

An exception to the preservation requirement has been described by this Court in *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). In *DuValt*, this Court noted that "when the issue was argued to or *decided by the trial court*," it is sufficiently preserved for appeal. *Id.* (Italics added.) We recently reaffirmed this exception in *State v. Jeske*, 164 Idaho 862, 868, 436 P.3d 683, 689 (2019).

We take this opportunity to clarify our preservation standards and again reiterate that both the issue *and a party's position on that issue* must be presented to the trial court before we will consider it on appeal. *See Gonzalez*, 165 Idaho at 99, 439 P.3d at 1271; *Siercke*, 167 Idaho at 715, 476 P.3d at 382. The exception set forth in *DuValt* does not apply to the State's argument in this instance. The district court specifically flagged the issue of reasonable suspicion to the parties at the hearing on Wilson's motion to suppress. Despite being clearly asked by the district court to brief the issue of whether Officer Malone had reasonable suspicion to detain Wilson when he did, the State contended below that the community caretaking exception to the warrant requirement applied to the initial interaction. Further, the State specifically argued below that reasonable suspicion developed only *after* Wilson had parked and exited his vehicle. This argument implies that Officer Malone did not have reasonable suspicion to detain Wilson *until* that point, therefore conceding the very argument it now makes on appeal—that Officer Malone had reasonable suspicion based on his first interaction with Wilson through the passenger window of his vehicle.

Allowing the State to argue on appeal that Officer Malone developed reasonable suspicion to detain Wilson *prior to* Wilson's exit from the vehicle, when it implicitly conceded this point

below, "would sharply cut against our longstanding and recently re-affirmed policy of requiring parties to present their arguments to the court below[.]" *Cohagan*, 162 Idaho at 721, 404 P.3d at 663. Therefore, the district court's order is affirmed.

## IV.    CONCLUSION

For the reasons set forth above, the decision of the district court granting Wilson's motion to suppress is affirmed.

Chief Justice BEVAN, Justices BRODY, MOELLER and WOOD, J. Pro Tem, CONCUR.