**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49835**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 8, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CHRISTIAN ISAIAH CARTER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Judgment of conviction for grand theft, unlawful possession of a firearm, and being a persistent violator, <u>affirmed</u>; order for restitution, <u>reversed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Christian Isaiah Carter appeals from his judgment of conviction for grand theft, unlawful possession of a firearm, and being a persistent violator. Carter also appeals from an order for restitution. We affirm his judgment of conviction and reverse the order for restitution.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

During an altercation, personal items from the victim's backpack, including a firearm, were stolen. While speaking with the detective who was investigating the incident, Carter admitted he took items from the backpack, including the firearm, still possessed the firearm; and arranged for the detective to recover the stolen firearm from Carter's roommate, J.B. The State charged Carter with grand theft for unlawfully taking, obtaining, or withholding the victim's firearm, I.C.

1

§ 18-2403(1); unlawful possession of a firearm, I.C. § 18-3316(1); and a persistent violator enhancement, I.C. § 19-2514.

A jury found Carter guilty of grand theft and unlawful possession of a firearm, after which Carter admitted the persistent violator allegation. The district court also entered an order for restitution, requiring Carter to pay $558.19 for items other than the firearm that were taken from the backpack. Carter appeals.

## II.

## ANALYSIS

On appeal, Carter first argues that the district court erred in admitting hearsay testimony from the investigating officer relating to information that Carter's roommate intended to purchase the stolen firearm. Carter also challenges the restitution award. The State responds that Carter failed to make an adequate record to preserve his hearsay argument and that, alternatively, any error in the admission of the challenged testimony was harmless. As to the restitution claim, the State concedes the district court erred. We hold that Carter's hearsay claim is not preserved because the record is inadequate for appellate review of that claim. Alternatively, any error in the admission of the challenged testimony was harmless. We also hold that the State's concession regarding Carter's restitution claim is well-founded and agree that the district court's restitution order must be reversed.

## A.     Preservation

Carter's claim that the district court erred in admitting hearsay testimony is based on the following exchange during rebuttal testimony from the investigating detective:

[Prosecutor]:          Sir, as part of your investigation, you were physically present and recovered the stolen gun from [J.B.] is that right?
[Detective]:            That is correct.
[Prosecutor]:          During your investigation, did you receive information that [J.B.] intended to purchase the gun?
[Detective]:            I did.
[Defense Counsel]:   Objection, calls for hearsay, your Honor.
[The Court]:            How is that not hearsay?
[Prosecutor]:          It's going to be effect on the listener, your Honor.
[The Court]:            Why don't you explain to me how that is going to be, real quick.
                       (Bench conference off the record.)

2

[The Court]:  I'm satisfied there's an *exception* as explained to me at the bench, so I will overrule the objection and you can ask your question or if you remember the question you can answer, detective.

. . . .

[Detective]:  Yes, I did.

[Prosecutor]:  Did that information correlate with the totality of the investigation that Mr. Carter is the one who controlled the gun after it was taken from [the victim]?

[Detective]:  Yes, because while speaking to Mr. Carter, he told me that he had had a couple thoughts of selling the gun and/or pawning the gun.

(Emphasis added).

According to Carter, the detective's answer elicited hearsay and was not excluded from the rule against hearsay by the prosecutor's explanation that it was offered for its "effect on the listener." For purposes of appellate review, Carter asks us to presume that the district court admitted the testimony based on the prosecutor's explanation offered prior to the untranscribed bench conference. We decline to do so.

A necessary predicate to appellate review is an adequate record, and it is well established that it is the appellant's burden to provide such a record. *State v. Mowrey*, 128 Idaho 804, 805, 919 P.2d 333, 334 (1996) (explaining error will not be presumed on appeal, but must be affirmatively shown in the record, which the appellant has the burden of providing). As Carter acknowledges in his reply brief, this burden includes making a record of any "off-the-record" discussions or rulings. *See Siercke v. Siercke*, 167 Idaho 709, 718, 476 P.3d 376, 385 (2020); *see also McKay Constr. Co. v. Ada Cnty.*, 126 Idaho 923, 925 n.1, 894 P.2d 156, 158 n.1 (Ct. App. 1995) (cautioning counsel that, in preserving a record, counsel should not rely on discussions, arguments or rulings taking place in chambers, hallways or during sidebars; counsel should place any such rulings or discussions on the record). No record was made following the bench conference on Carter's hearsay objection. As such, there is nothing in the record from which we can assess whether a basis for admission other than "effect on the listener" was argued to or found by the district court. If anything, the district court's post-bench conference comments indicate it concluded the testimony was admissible based on an *exception* to the rule against hearsay and not because it was admissible for its effect on the listener, which would render the testimony *non*-hearsay for which no exception would be needed. *See* I.R.E. 801(c) (defining hearsay, in part, as a statement offered to prove the truth of the matter asserted in the statement). Because Carter

3

failed to make an adequate record for appellate review of the testimony he claims was improperly admitted, we need not consider the merits of his arguments that the testimony could not be admitted for its effect on the listener.

## B.     Harmless Error

Even assuming error in the admission of the detective's testimony that he "receive[d] information that [J.B.] intended to purchase the gun," any error was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Yates v. Evatt*, 500 U.S. 391, 403 (1991); *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

The harmless error standard is easily satisfied in this case because the detective's testimony that he received information that J.B. intended to purchase the stolen firearm does not introduce any specific statement and was ultimately unimportant in relation to the other unchallenged evidence the jury considered. That evidence included the audio recording of the interview between the detective and Carter. During the interview, Carter admitted he took the firearm from the backpack and had his roommate, J.B., hide it in their house. The detective testified that Carter called J.B. and arranged for the detective to collect the firearm from him. Carter also testified at trial and claimed the version of events he told the detective was not entirely true and that he lied

to the detective to protect others. The version of events Carter testified to at trial included that he saw someone else give the firearm to J.B. Carter again explained that he did not tell the detective this information because he wanted to "protect everybody else from something that got way out of hand." Carter also admitted at trial that he took several items from the backpack but did not take the firearm even though he helped the detective retrieve it from J.B., and Carter admitted that he told the detective it "ran by [his] mind" to sell or pawn the firearm. When asked on cross-examination if he intended to sell the firearm to J.B., Carter answered: "No, I didn't." The prosecutor then asked if J.B. would be "lying" if J.B. told the detective that J.B. "was going to buy the gun from [Carter] but [J.B.] didn't know it was stolen." Carter answered, "Yes," and suggested that J.B. lied to "protect himself."

The probative force of the unidentified hearsay to which Carter objected is negligible to nonexistent. Comparing the detective's testimony that he received information from some unspecified source that J.B. intended to purchase the firearm from some unspecified person against the unobjected-to evidence on this same point, including Carter's own testimony, supports the conclusion that the allegedly erroneous testimony did not contribute to the jury verdict finding Carter guilty of grand theft and unlawful possession of a firearm. Indeed, whether J.B. intended to purchase the firearm was not necessary to a guilty verdict on either count. More probative of Carter's guilt on the charged offenses was his own admissions as well as the victim's testimony identifying Carter as one of the assailants during the attack that resulted in the theft of his backpack, which included the firearm, as well as the testimony of the victim's sister who witnessed the altercation. We are not persuaded by Carter's argument that the alleged error was not harmless because the "jury was tasked with determining beyond a reasonable doubt" which version of events Carter gave was true--the one to the detective or the one at trial. The detective's testimony that he received information that J.B. wanted to purchase the firearm would barely move the needle on the jury's assessment of Carter's credibility given his own differing version of events.

The State has met its burden of proving that any error in the admission of the objected-to testimony was harmless beyond a reasonable doubt.

## C. Restitution

At the restitution hearing, the State sought restitution for several items taken from the victim's backpack, including a Louis Vuitton belt, a Nike bag, and part of a wallet; the State did

not seek any restitution for the firearm that served as the basis of the grand theft and unlawful possession of a firearm charges. The district court granted the State's restitution request for these items.

Carter argues that the district court abused its discretion by ordering him to pay restitution for items that were not charged by the State as part of its theory of grand theft. On appeal, the State concedes error on this point. The State's concession is well-taken, and we agree the district court erred in ordering restitution for stolen items that did not form the basis of any criminal charge for which the jury found Carter guilty. As noted by the State, absent an agreement otherwise, restitution is limited to economic losses that are the result of the crime. *See generally* I.C. § 19-5304. The grand theft charge for which Carter was convicted of alleged he wrongfully took, obtained, and/or withheld a firearm from the victim. Nothing in the grand theft charge (or any other charge) alleged that Carter stole any of the items that were included in the restitution order. Nor did Carter agree to pay restitution for any uncharged offenses. Accordingly, the order for restitution is reversed.

## IV.

## CONCLUSION

Carter did not provide an adequate record for appellate review of his claim that the district court erred by admitting hearsay testimony. Even assuming error in the admission of the alleged hearsay, the error was harmless. The district court erred in ordering Carter to pay restitution for items that were not included in any of the charged offenses for which Carter was convicted. Carter's judgment of conviction for grand theft, unlawful possession of a firearm, and being a persistent violator is affirmed. The order for restitution is reversed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.