# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46949

TECH LANDING, LLC, an Idaho limited liability company,

    Plaintiff-Appellant,

v.

JLH VENTURES, LLC. an Idaho limited liability company, dba TRUE PAINTBALL, LLC,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2020 Term

Opinion Filed: March 23, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The district court's order is <u>reversed</u> and <u>remanded</u> for further proceedings.

Sasser & Jacobson, PLLC, Boise, for appellant. James Jacobson argued.

Anderson, Julian & Hull, LLP, Boise, for respondents. Phillip Collaer argued.

———————————

BRODY, Justice.

This appeal involves the grant of summary judgment on a negligence claim stemming from a fire loss. In 2013, Tech Landing, LLC ("Tech Landing") leased a building to JLH Ventures, LLC ("JLH") to operate a paintball business. After the building burned down in 2017, Tech Landing sued JLH, alleging breach of contract, breach of the covenant of good faith and fair dealing, and negligence. The breach of contract and breach of the covenant of good faith and fair dealing claims involved payment of rent after the building was destroyed and the failure to insure the building against fire loss. Those claims have been dismissed by stipulation of the parties and are not at issue here. With respect to its negligence claim, Tech Landing alleges that the fire was caused by the negligence of JLH. After ruling certain opinions of Tech Landing's

1

expert witnesses were inadmissible, the district court granted summary judgment to JLH. We affirm the district court's ruling on the admissibility of the expert opinions, but reverse its grant of summary judgment because there are genuine issues of material fact that must be decided by a jury.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In its complaint, Tech Landing alleged three different theories as to how JLH's negligence caused the fire that destroyed its building: (1) "connecting too many pieces of equipment into power strips," (2) "failure to clean and maintain the laundry room including the washer and dryer units," and (3) "negligently leaving a base board heater running after hours." Tech Landing appears to have abandoned the first and third theories at some point in the litigation and instead refined its second theory. Though not stated with precision in Tech Landing's arguments below, the district court understood Tech Landing to assert the allegedly negligent actions that caused the fire were: (1) JLH's failure to clean lint from the back of the dryer left running after hours on the night of the fire, or (2) JLH's use of a piece of PVC pipe for a portion of the dryer's exhaust ducting.

JLH moved for summary judgment in November 2018, arguing that no evidence showed the fire was caused by its negligence. In support of the motion, JLH included a report from Dennis Zigrang, a fire investigator, concluding that neither a specific ignition source nor the exact origin of the fire could be identified, but that the fire could not have originated in the laundry room. JLH also included a report from Captain Boehm of the Boise Fire Department, concluding that the cause of the fire was undetermined and that it was possible, but unlikely, that the fire was caused by the clothes dryer.

Tech Landing opposed the summary judgment motion and submitted its own expert reports and declarations. The report of Dean Hunt, a fire investigator, contradicted Zigrang's report by concluding that the fire did originate in the laundry room. Further, Hunt concluded that while the specific ignition sequence was not identified, the probable cause of the fire was the dryer left running on the night of the fire. However, Hunt noted that review by an electrical engineer was necessary to conclusively determine the fire's cause. The report of David Cutbirth, an electrical engineer, concluded that the fire was not caused by an electrical fault in the dryer, but rather by combustion within the dryer exhaust duct, at or near a piece of PVC pipe used for part of the ducting. Tech Landing did not file a subsequent report from Hunt incorporating the

2

findings of Cutbirth.

At the hearing on the summary judgment motion, JLH objected to the admissibility of both Hunt's and Cutbirth's reports, arguing that neither witness was qualified to offer expert testimony and that both reports lacked sufficient factual foundation for their conclusions. The district court took both the summary judgment and admissibility matters under advisement. In February 2019, the district court entered an order on JLH's evidentiary objections and motion for summary judgment. On the evidentiary matters, the district court ruled that the opinions of Hunt and Cutbirth on the cause of the fire were inadmissible. Specifically, the court found that Hunt's opinion that the dryer was the probable cause of fire was not based on his expertise, but "a logical deduction any person [could] choose to draw or not draw on his or her own." Therefore, it was inadmissible as an expert opinion. Similarly, the district court found Cutbirth's opinion that the fire began in the exhaust duct was not based on any expertise, but merely "an inference [Tech Landing] would like the jury to draw from various facts."

In its summary judgment ruling, the district court found there was a genuine dispute whether the fire began in the laundry room. However, without admissible expert opinion to establish the dryer was the cause of the fire, the court ruled this dispute was not material. Therefore, it granted summary judgment in favor of JLH on the negligence claim. Tech Landing timely appeals.

## II. STANDARD OF REVIEW

This Court reviews summary judgment rulings using the same standard that the district court used. *Eldridge v. West*, 166 Idaho 303, ___, 458 P.3d 172, 177 (2020). The movant has the burden of showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 867, 454 P.3d 504, 509 (2019). If the movant makes that showing, the district court must grant summary judgment. *Eldridge*, 166 Idaho at ___, 458 P.3d at 177. When determining whether a genuine issue of material fact exists, the district court must liberally construe the facts and draw all reasonable inferences in favor of the nonmoving party. *Eagle Springs*, 165 Idaho at 867–68, 454 P.3d at 509–10. Summary judgment should not be granted if reasonable people could reach different conclusions or inferences from the evidence. *Gomez v. Crookham Co.*, 166 Idaho 249, ___, 457 P.3d 901, 905 (2020).

A district court's ruling on the admissibility of expert testimony is reviewed for an abuse

3

of discretion. *Green v. Green*, 161 Idaho 675, 679, 389 P.3d 961, 965 (2017). When reviewing a lower court's decision for an abuse of discretion, this Court considers whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). The admissibility of expert testimony is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment. *Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 473, 337 P.3d 627, 632 (2014).

## III. ANALYSIS

### A. The district court did not abuse its discretion when it ruled that portions of Tech Landing's experts' testimony were inadmissible.

Idaho Rule of Evidence 702 governs the admissibility of expert testimony. A trial court has broad discretion to determine the admissibility of expert testimony under the rule. *Weeks v. E. Idaho Health Servs.*, 143 Idaho 834, 837, 153 P.3d 1180, 1183 (2007). Generally, expert testimony is admissible "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." I.R.E. 702. A corollary of this rule is that expert opinion is inadmissible if it "concerns conclusions or opinions that the average juror would be qualified to draw from the facts utilizing the juror's common sense and normal experience." *Athay v. Stacey*, 142 Idaho 360, 367, 128 P.3d 897, 904 (2005). While a court may not exclude testimony simply because it disagrees with an expert's conclusions, it must distinguish between "the self-validating expert, who uses scientific terminology to present unsubstantiated personal beliefs," and genuine experts employing methodologies recognized as valid within their respective fields. *Coombs v. Curnow*, 148 Idaho 129, 140–41, 219 P.3d 453, 464–65 (2009).

1. Admissibility of Hunt's opinions

Tech Landing's expert, Dean Hunt, a fire investigator, examined the scene of the fire in October 2017. Based on his observations, Hunt eliminated several areas of the building as possible origins of the fire before focusing on the laundry room. In the laundry room, Hunt noted there were burned remnants of fabric in one of two clothes dryers, and that the pattern of fire damage on the dryer began at the rear bottom and moved toward the front. Hunt also interviewed Jeremy Haile, one of the owners of JLH. Relevant here, Haile told Hunt that a dryer had been left

4

running when the last employee left the building on the night of the fire; that the dryers had been purchased twelve years earlier; and, that the backs of the dryers had never been removed to clean out lint. Hunt's report closed with the following analysis:

> This fire originated in the laundry room located in the northeast corner of the structure. This determination was based on the observed patterns of fire damage, witness statements, and a systematic evaluation of the remaining physical evidence and within a reasonable degree of fire science certainty. The probable cause of this fire is the dryer in the laundry room that had been left running prior to the fire. The cause of this fire is undetermined pending an evaluation by an electrical engineer.

The district court characterized Hunt's analysis as containing "two basic opinions": (1) that the fire originated in the laundry room and (2) that the dryer was the probable cause. While the district court found Hunt's opinion on the fire's origin was admissible (i.e., that the fire started in the laundry room), it excluded his opinion about its probable cause (i.e., that the dryer caused the fire). The district court held Hunt's opinion on origin was admissible because it was based on Hunt's observation of the fire site and "interpreting burn patterns, and distinguishing damage caused by flame versus smoke versus heat are things beyond the experience of most jurors." However, according to the district court, Hunt's conclusion about the probable cause of the fire did not rely on any special skill or knowledge. Rather, the district court held Hunt's opinion on causation invaded the province of the jury:

> [Hunt] is simply making a logical deduction any person can make (or choose not to make). He opines the dryer is likely to be the cause of fire because 1) it is in the room where the fire started, 2) it appears the fire started near the back of the dryer, 3) the dryer was on at the time the fire started, and 4) he was told the back of the dryer had never been removed to clean out any lint build up.

Further supporting its holding, the district court observed that Hunt's report stated his opinion on the fire's origin was reached "within a reasonable degree of fire science certainty," while it does not appear to make the same claim about the fire's probable cause. Thus, the district court concluded the opinion was inadmissible under Idaho Rule of Evidence 702.

Tech Landing makes four arguments that the district court abused its discretion to exclude Hunt's opinion about the probable cause of the fire: (1) the district court inappropriately required Hunt to opine on a "specific ignition sequence" instead of a reasonably probable cause, (2) the court "failed to recognize the scientific methodology Hunt utilized in reaching both opinions," (3) the court substituted its own judgment for that of Hunt, and (4) the court

5

unreasonably parsed the language of Hunt's report to conclude his opinion was not reached through his expertise.

As a preliminary matter, JLH contends that Tech Landing waived any argument the district court abused its discretion because Tech Landing failed to specify in its opening brief which prong of the abuse of discretion standard the district court did not meet. JLH's argument is misplaced. While this Court declines to address conclusory arguments or arguments unsupported by authority, it does not impose a "formalistic requirement that the standard of review be recited and the party claiming error attack a particular prong of that standard of review." *State v. Jeske*, 164 Idaho 862, 869, 436 P.3d 683, 690 (2019); *State v. Kralovec*, 161 Idaho 569, 575 n. 2, 388 P.3d 583, 589 n.2 (2017). Here, Tech Landing identified the appropriate standard of review, made arguments relevant to the standard, and cited authority to support its arguments. Tech Landing's abuse of discretion arguments have not been waived.

Nonetheless, Tech Landing's arguments are unavailing. First, its argument that the district court abused its discretion by requiring Hunt to opine as to the specific ignition sequence (instead of a probable cause) misses the mark. It is well established that an expert witness may express an opinion in terms of probability instead of certainty. *See, e.g.*, 31A AM. JUR. 2D *Expert and Opinion Evidence* § 54 ("While expert opinions must be based on facts which enable the expert to express a reasonably accurate conclusion, absolute certainty is not required."); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("Lack of certainty is not, for a qualified expert, the same thing as guesswork."). However, the district court did not exclude the opinion because Hunt was insufficiently certain of his conclusion; it excluded Hunt's opinion because it found no expertise was necessary to reach it.

There are two general classes of matters in which expert testimony is helpful to a jury. In the first class, a juror can use common knowledge and experience to draw accurate conclusions from the relevant facts, but establishing the facts themselves requires special expertise. In the second class, special expertise is necessary both to establish facts *and* to draw accurate conclusions. *See* 31A AM. JUR. 2D *Expert and Opinion Evidence* § 37 (2020); *cf. Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, ___, 457 P.3d 875, 882–83 (2020) (recognizing that expert testimony is not necessary to establish proximate causation in some medical malpractice cases, but that expert testimony is required where causation involves "highly-technical medical questions"). Here, the matter of the fire's origin clearly belongs to the second class: interpreting

6

patterns of heat, flame, and smoke damage to determine the progression of a fire through a building is not a matter of common knowledge or experience. However, the district court found the matter of the fire's cause was within the first class because—based on the facts presented—it was "a logical deduction any person [could] choose to draw or not draw on his or her own." While reasonable minds could disagree with the district court's determination, we cannot conclude the district court abused its discretion in light of Hunt's report.

Idaho Rule of Civil Procedure 26 provides that a party intending to rely on expert testimony at trial must disclose "a complete statement of all opinions to be expressed *and the basis and reasons for the opinion*." I.R.C.P. 26(b)(4)(A)(i) (emphasis added). It is certainly possible that Hunt based his opinion about the probable cause of the fire on special knowledge or skill as a fire investigator, but other than placing the origin of the fire near the dryer, nothing in his report discloses what this might have been. Notably, by including Jeremy Haile's statements about not cleaning lint from the dryer, Hunt's report implies that an accumulation of lint within the dryer may have caused the fire. But Hunt did not expressly state this, much less explain how he reached this conclusion using his special knowledge and skill as a fire investigator.

Tech Landing's second and third arguments are unavailing for a similar reason. Nothing in the district court's order suggests that it misunderstood Hunt's methodology or that it excluded Hunt's opinion because it disagreed with the opinion. Rather, the district court concluded Hunt's opinion was inadmissible because it was not based on Hunt's expertise. As explained above, this was not an abuse of discretion in light of Hunt's report.

Finally, the district court did not inappropriately parse the language of Hunt's report to find it significant that Hunt did not clearly assert his causation opinion was reached "within a reasonable degree of fire science certainty." To the contrary, this is a reasonable reading of Hunt's report and it illustrates how the report was inadequate to demonstrate that Hunt's causation opinion was based on his expertise. Hunt acknowledged that the actual cause of the fire was undetermined pending evaluation by an electrical engineer, but he did not explain what such an evaluation would establish. Moreover, Hunt did not supplement or amend his report after the evaluation by an electrical engineer was complete. In the absence of this information, the district court did not abuse its discretion to rule Hunt's causation opinion was inadmissible.

2. Admissibility of Cutbirth's opinions

In addition to Hunt's report, Tech Landing provided a report by David Cutbirth. Cutbirth's report indicated he is a professional electrical engineer, but because his *curriculum vitae* was not attached to his report, the district court had no further knowledge of his qualifications. As with Hunt's expert report, the district court found portions of Cutbirth's report admissible, while excluding other portions.

Cutbirth's report contained two primary opinions. First, Cutbirth concluded the fire had not been caused by an electrical fault in the dryer. Second, Cutbirth opined that the fire was "caused by combustion within the drier [sic] vent, at or near the PVC piping" that formed part of the dryer's exhaust. To support his second opinion, Cutbirth noted the International Mechanical Code requires that exhaust ducts for dryers must be constructed of metal; that air moving through PVC is prone to create static, which may cause a buildup of lint; that clothes dryers may exhaust air as hot as 155 degrees Fahrenheit; and that the maximum operating temperature of PVC is 140 degrees Fahrenheit. The district court held Cutbirth's opinion that an electrical fault had not caused the fire was admissible because, as a professional electrical engineer, Cutbirth was qualified to offer this opinion. The court also found Cutbirth's opinion that the PVC exhaust duct was prone to static buildup was admissible. However, the court held Cutbirth's opinion that the fire was caused by combustion in the dryer vent was inadmissible speculation.

Tech Landing argues the district court abused its discretion by sitting as its own expert to rebut and then exclude Cutbirth's opinion that the fire began in the dryer vent. It cites *Nield v. Pocatello Health Services, Inc.*, 156 Idaho 802, 811, 332 P.3d 714, 723 (2014), for the proposition that a trial court may not weigh the credibility of an expert's opinion to determine admissibility, and points to five statements by the district court that it claims demonstrate impermissible weighing:

(1) "The [c]ourt accepts Mr. Cuthbirth's [sic] statement that air moving through a PVC pipe may build up a static electric charge on the surface of the pipe, although the [c]ourt's understanding is that it is generally solid particulates in the air that cause such a build-up, not the gas molecules themselves."

(2) "Mr. Cuthbirth's [sic] statement that PVC is prone to static buildup seems unlikely to be true in humid environments, but is certainly consistent with common experience in more arid environments, like Boise."

(3) "The [c]ourt suspects different materials have different fire points and different ignition temperatures. What is the minimum ignition energy for lint, if that is what Mr. Cuthbirth [sic] believes combusted? How much energy

8

does Mr. Cuthbirth [sic] think this static discharge had? Can a hunk of PVC pipe this size even store that much energy in the form of static electricity (i.e. what is the pipe's capacitance?) If a static discharge occurs, is it always going to discharge all of its stored electrical energy or will the discharge be more localized because electrons do not move freely along the surface of an insulator?

(4) "If a static charge built up on the pipe, what happened to cause a discharge? If the dryer was simply running and no one was around, what happened such that the electrical energy on the PVC pipe, which was building up because it had no place to go, suddenly had a place to go? What did it spark to? The aluminum dryer vent? If so, why wasn't it sparking all the time and how did it build up enough electrical energy to bring a fuel above its fire point or ignition temperature when it finally did arc? If it did not spark to something normally in place, what changed so it suddenly had a place to arc to?"

(5) "[Cutbirth's] statements about the maximum operating temperature of PVC also do not appear to support his opinion. PVC is a vinyl. At higher temperatures it softens. The Court understands the maximum operating temperature to be related to PVC's structural integrity; not its flammability. It starts to get soft above 140 degrees Fahrenheit; therefore, it is less capable of supporting loads at those temperatures. That doesn't mean PVC melts at that temperature and it certainly doesn't mean PVC will ignite at that temperature. It doesn't mean PVC starts to give off flammable gas at that temperature. If Mr. Cuthbirth [sic] believes the lint was the fuel source, what does the maximum operating temperature of PVC have to do with how the lint combusted?"

The first two of these statements do not support Tech Landing's argument because they pertain to Cutbirth's opinion that the PVC exhaust ducting could create static and accumulate lint—an opinion the district court found admissible. The remaining three statements, however, pertain to Cutbirth's excluded opinion that the cause of the fire was combustion in the exhaust duct. As discussed in the next section addressing the appropriateness of summary judgment, the district court's statements about its own understanding of relevant scientific principles give this Court pause, but the district court did not abuse its discretion by excluding Cutbirth's opinion on the cause of the fire.

Tech Landing is correct to assert that a trial court may not substitute its judgment for that of a qualified expert. However, "[i]n determining whether expert testimony is admissible, a court must evaluate the expert's ability to explain pertinent scientific principles and to apply those principles to the formulation of his or her opinion." *Coombs*, 148 Idaho at 140–41, 219 P.3d at 464–65. In other words, the weight of an expert's opinion is a question for the jury, but whether

9

a witness is an expert, or has employed a valid methodology to reach his or her conclusions, is a question that must first be answered by the trial court. *Id.*

Here, Cutbirth explained how he formed his opinion that an electrical fault did not cause the fire employing the specialized knowledge of an electrical engineer: had the fire been caused by an electrical fault within the dryer, the circuit breaker feeding the dryer likely would have tripped; however, the circuit breaker was not tripped before power to the laundry room electrical panel was lost due to the fire; therefore, an electrical fault in the dryer likely did not cause the fire. However, Cutbirth's report offers no similar analysis for his opinion that the fire began in the dryer vent. Cutbirth merely states that PVC ducting may create static electricity which attracts lint, that dryers exhaust hot air, and that PVC is not intended for high temperature applications such as a dryer vent. He does not explain how he used these facts to reach his conclusion, nor how his reasoning relates to his training as an electrical engineer.

In the absence of analysis by Cutbirth, the final three statements highlighted by Tech Landing are better characterized as the district court identifying gaps in Cutbirth's application of his expertise to observed facts, rather than the district court weighing its own scientific understanding against Cutbirth's. For example, the district court does not contradict Cutbirth's statement that PVC's maximum operating temperature is 140 degrees Fahrenheit; it notes that Cutbirth does not explain how this fact is connected to his opinion that the fire caused combustion in the dryer vent. Likewise, the district court does not expressly challenge Cutbirth's apparent conclusion that lint was the fuel source for the fire; it notes that Cutbirth does not explain why he believes that to be the case here.

A trial court has broad discretion to determine whether an expert is qualified to offer his or her opinions. *Weeks*, 143 Idaho at 837, 153 P.3d at 1183. The district court noted gaps apparent in Cutbirth's report that bring into question whether his opinion as to the cause of the fire was based on expert knowledge, or whether he was qualified to opine on the cause of the fire at all. Therefore, the district court did not abuse its discretion by excluding Cutbirth's opinion on the cause of the fire.

**B. The district court erred in granting summary judgment in favor of JLH**

Tech Landing contends the district court erred when it granted summary judgment to JLH because it determined there was no genuine issue of material fact as to whether Tech Landing's negligence caused the fire. To prevail on a negligence claim, a plaintiff must establish four

10

elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Ackerschott*, 166 Idaho at ___, 457 P.3d at 882. Summary judgment is only appropriate where, drawing all reasonable inferences and construing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Eagle Springs*, 165 Idaho at 867, 454 P.3d at 509. Here, the district court found that there was a genuine dispute as to where the fire began in the building: JLH's expert concluded the fire could not have started in the laundry room, while Hunt's admissible opinion was that the fire must have started in the laundry room. Nevertheless, the district court granted summary judgment to JLH because it found Tech Landing failed to support the causation element of its negligence claim and, therefore, the dispute about the origin of the fire was not material.

Tech Landing argues it set forth sufficient evidence of causation to survive summary judgment because it pointed to evidence that JLH negligently installed and maintained the dryer and its experts concluded the dryer was the cause of the fire. JLH argues summary judgment was properly granted because Hunt "stopped short of concluding the dryer was the cause of the fire" and Cutbirth's opinion the fire started in the exhaust duct was inadmissible. Thus, JLH maintains, Tech Landing failed to demonstrate there was a material dispute as to JLH's negligence. We disagree. Even without the excluded portions of Hunt's and Cutbirth's reports, Tech Landing put forth sufficient evidence to avoid summary judgment.

As stated by the district court after making its evidentiary rulings:

> In the light most favorable to the Plaintiff the evidence in the record is that the fire started in the laundry room, the fire was not caused by an electrical fault, in the dryer or elsewhere, the dryer was on at the time, the back of the dryer had never been cleaned, there was a PVC pipe being used for part of the dryer exhaust tubing, air moving through a PVC pipe is capable of generating static electricity; static electricity is capable of attracting lint; some dryers are capable of exhausting air with temperatures as high as 155 degrees Fahrenheit; and the rags inside the dryer and the inside of the dryer appear damaged by flame and heat; whereas other appliances in the room appear to have been damaged only by heat from outside.

We hold the above facts are sufficient for a reasonable juror to conclude that negligent installation or maintenance of the dryer by JLH caused the fire.

11

In finding that Tech Landing presented no evidence of causation, the district court appears to misapprehend the nature of proof permissible in a negligence case. After reciting the facts favorable to Tech Landing, the district court wrote:

> Assuming Defendant's act of installing the PVC pipe and/or Defendant's failure to clean the back of the dryer were negligent, no rational juror could conclude those acts were more likely to have caused the fire than anything else; spontaneous combustion of the rags in the dryer? A flammable substance spilled on the laundry room floor that went undetected? A flammable substance on the rags that went in the dryer? A burglar/arsonist? Plaintiff wants the jury to speculate about how this fire likely started without proffering any evidence about how it could have started. What was the ignition source? What was the first fuel to burn? Does Plaintiff want the jury to simply assume that an exhaust temperature of 155 degrees F is hot enough to cause lint to combust? Does Plaintiff want the jury to simply assume a static electric discharge from a short section of PVC pipe carries enough energy to ignite lint?

But Tech Landing does not need to have direct evidence of how the fire started or to prove the precise conditions within the dryer exhaust vent on the night of the fire. "[C]ircumstantial evidence is competent to establish negligence and proximate cause." *Krinitt v. Idaho Dep't of Fish & Game*, 159 Idaho 125, 129, 357 P.3d 850, 854 (2015); *accord Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 783, 25 P.3d 88, 96 (2001); *Henderson v. Cominco Am., Inc.*, 95 Idaho 690, 696, 518 P.2d 873, 879 (1973); *Splinter v. City of Nampa,* 74 Idaho 1, 10, 256 P.2d 215, 220 (1953). Thus, "the possibility, or even probability of another cause for damages than that alleged does not defeat recovery where plaintiff presents sufficient facts to justify a reasonable juror in concluding that the thing charged was the prime and moving cause." *Thomas Helicopters, Inc. v. San Tan Ranches*, 102 Idaho 567, 571, 633 P.2d 1145, 1149 (1981); *see also* 57A AM. JUR. 2D *Negligence* § 443 ("Absolute certainty cannot be achieved in proving negligence circumstantially; but such proof may satisfy where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence.").

Accordingly, Tech Landing's burden to avoid summary judgment was not to disprove every possible non-negligent cause of the fire, but to point to evidence from which a rational juror could find negligence was the cause. As the district court observed in its evidentiary rulings, Tech Landing met this threshold from the facts and admissible opinion in Hunt's report alone. The court ruled Hunt's causation opinion was inadmissible *precisely because it was a logical deduction any juror could make* from the fact that the dryer had been left running unattended and its back had never been cleaned of lint. The summary judgment standard required

12

the district court to draw all reasonable inferences in favor of Tech Landing, and because it did not do so, the grant of summary judgment in favor of JLH must be reversed.

Finally, we observe that the only effect of excluding Cutbirth's opinion on causation should have been to preclude consideration of the inadmissible opinion. In particular, Cutbirth's failure to offer an admissible opinion on exactly how lint in the dryer vent might have caused a fire did not establish, as a matter of law, that an accumulation of lint in a clothes dryer or its exhaust vent cannot cause a fire. Thus, while identification of gaps in Cutbirth's expert report was relevant to the district court's admissibility ruling, reiteration of those gaps in the course of deciding the summary judgment motion gives the appearance the court weighed the evidence against Tech Landing. Further, the district court's statements about its own understanding of scientific principles reinforce this appearance. To the extent the district court doubts the combustion of an accumulation of lint (either in the dryer vent or back of the dryer) caused the fire, this is not a matter for the district court to decide at the summary judgment stage or otherwise—it is a question for the jury to resolve at trial.

## IV. CONCLUSION

The district court's decision on the admissibility of Hunt's and Cutbirth's expert opinions is affirmed. The district court's decision granting summary judgment in favor of JLH is reversed and the case is remanded. Costs on appeal are awarded to Tech Landing.

Chief Justice BEVAN and Justice BURDICK concur.


STEGNER, J., dissenting.

I respectfully dissent from the majority's conclusion that the district court properly excluded expert testimony of both Hunt and Cutbirth. I would find that the district court abused its discretion in excluding portions of each expert's proffered testimony because the testimony would have assisted the trier of fact as to the origin and possible causes of the fire.

I begin with an analysis of the law as it relates to expert opinions. "To give expert testimony, a witness must first be qualified as an expert on the matter at hand." *State v. Pearce*, 146 Idaho 241, 245, 192 P.3d 1065, 1069 (2008). "Once the witness is qualified as an expert, the trial court must determine whether such expert opinion testimony will assist the trier of fact in understanding the evidence." *Id.* at 246, 192 P.3d at 1070. In this case, the district court found

13

that both Hunt and Cutbirth were at least partially qualified to render opinions about the circumstances surrounding the fire but rejected their ultimate opinions regarding causation.

"Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "The judge is 'supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.'" *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (quoting *Alaska Rent–A–Car, Inc., v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (2013)). "Simply put, '[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" *Id.* "A district court should not make credibility determinations that are reserved for the jury." *Id.* at 814.

"[M]ost courts implicitly reject the notion that Rule 702 merely preserves the common law or precludes expert testimony regarding matters within common experience. These courts assume that, even where the jury can understand the evidence at some level, expert testimony satisfies the 'help' requirement if it advances the jury's understanding to *any degree*." *Interpretation of the "Help" Requirement*, 29 FED. PRAC. & PROC. EVID. § 6265.1 (2d ed.) (italics added). "In line with the notion that expert testimony helps if it advances the jury's understanding to any degree, some courts conclude that expert testimony meets the requirements of Rule 702(a) even where the jury has some familiarity with the subject, but that familiarity is incomplete or inaccurate." *Factors Considered: Relevance, Need, and Infringement on Role of Judge or Jury*, 29 FED. PRAC. & PROC. EVID. § 6265.2 (2d ed.).

A detailed description of the testimony excluded by the district court is enlightening. Regarding Hunt's testimony, the district court found Hunt was qualified to render both proffered opinions. The district court found that Hunt's opinion that the "fire originated in the laundry room," was admissible because it was based on his "observation of burn patterns and heat damage to the structure and various objects within it" (i.e., the dryer). Conversely, the district court found that even though Hunt was qualified his opinion that the "probable cause of the fire was the dryer" was not admissible.

The district court apparently reached its conclusion because Hunt purportedly did not assert that this conclusion was "reached to the degree of certainty accepted within the field of fire science" as he did with his initial opinion. The district court also suggests that it was improper

14

for Hunt to rely on information provided to him during his investigation by the owner of the building. The district court does not explain why this is so. However, if the information relied on by Hunt is the type of information relied on by similar experts in his field, and there is no suggestion that this was not the type of information relied on by Hunt, he is allowed to rely on it. *See Coombs v. Curnow*, 148 Idaho 129, 140, 219 P.3d 453, 464 (2009); *see also* I.R.E. 703.

Additionally, the district court states that Hunt's opinion on the probable cause of the fire did "not appear to be based on any specialized knowledge that Mr. Hunt has." The district court continued by concluding that Hunt was "simply making a logical deduction any person can make (or choose not to make)." Finally, the district court conceded that Hunt had "qualified his opinion in the way the [c]ourt would expect a professional in his field to do so."

I would conclude that the district court abused its discretion in excluding Hunt's opinion. Although the district court is afforded deference in its determination of admissibility of expert opinions, that deference is not boundless. The district court split hairs by excluding Hunt's second opinion that the probable cause of the fire was the dryer based primarily on the fact that Hunt did not specify that this opinion was rendered within the acceptable degree of fire science certainty. In actuality, Hunt's two ultimate opinions were discussed on the same page of his report, along with his assertion that his opinions were based on the accepted degree of fire science certainty. The analysis section of Hunt's report provided:

> This fire originated in the laundry room located in the northeast corner of the structure. *This determination was based on the observed patterns of fire damage, witness statements, and a systematic evaluation of the remaining physical evidence and within a reasonable degree of fire science certainty.* The probable cause of this fire is the dryer in the laundry room that had been left running prior to the fire.

(Italics added).

Further, the district court noted that Hunt had qualified his opinion appropriately as any expert would. Finally, the district court found that Hunt was merely making a logical deduction that any person could have made. This determination invades the province of the jury because the jury, as the fact finder, is the proper body to decide whether to give credence to Hunt's opinion. The district court abused its discretion in determining that Hunt's opinion would not assist the jury because the district court improperly made a credibility determination that should have been left to the jury. In addition, having made the determination that Hunt was merely making a logical deduction that any person could have made, the district court erred in ultimately

15

concluding summary judgment was warranted. If the opinion arises from a logical deduction any person could make, there obviously exists a question of fact for resolution by the jury. It is illogical to conclude that a logical deduction may be drawn by the jury and at the same time conclude that the jury should not be allowed to apply its logic to the question presented.

With respect to Cutbirth's testimony, the district court first attacked Cutbirth's overall credibility, noting that a curriculum vitae had not been attached to his report and that Cutbirth inconsistently referred to himself as both a "principal electrical engineer" and a "professional electrical engineer." (As an aside, it should be noted that JLH did not register an objection to the fact that Cutbirth's affidavit did not contain a curriculum vitae. Had it done so, Tech Landing could have supplemented Cutbirth's affidavit. However, because it did not know this would be a basis for the district court's decision, it was unable to cure the problem identified solely by the district court.) Based on Cutbirth's lack of testimony regarding his education or work experience, the district court found Cutbirth qualified to render only one opinion: that the "fire was not caused by an electrical fault, either within the dryer or elsewhere." That opinion was admissible, according to the district court, because Cutbirth is a professional electrical engineer and the opinion was "based on information he received from others about the status of the circuit breakers within the structure."

Cutbirth proffered another opinion that the "fire was [likely] caused by combustion within the dryer vent." The district court ultimately excluded this opinion for several reasons. First, the district court found that despite Cutbirth providing several reasons for his opinion, there was "not a sufficient basis to remove Mr. Cutbirth's opinion from the realm of speculation." Cutbirth stated that he reached his opinion that combustion in the dryer caused the fire based on Hunt's opinion as to the origin of the fire, the installation of PVC pipe behind the dryer, that PVC pipe is prone to creating static electricity, that the maximum operating temperature of PVC is 140 degrees Fahrenheit, and that "dryer discharge temperatures" could reach up to 155 degrees Fahrenheit.

In addition, the district court engaged in fact-finding regarding Cutbirth's opinion:

The Court will accept as common knowledge that Poly Vinyl Chloride (PVC) is an insulator. The Court accepts Mr. Cutbirth's statement that air moving through a PVC pipe may build up a static electric charge on the surface of the pipe, although the Court's understanding is that it is generally solid particulates in the air that cause such a build-up, not the gas molecules themselves. Mr. Cutbirth's statement that PVC is prone to static buildup seems unlikely to be true in humid

16

environments, but is certainly consistent with common experience in more arid environments, like Boise. The Court will simply accept those statements as statements Mr. Cutbirth is qualified to make. They are facts any high school graduate ought to know.

. . .

[Cutbirth's] statements about the maximum operating temperature of PVC also do not appear to support his opinion. PVC is a vinyl. At higher temperatures it softens. The Court understands the maximum operating temperature to be related to PVC's structural integrity; not its flammability. It starts to get soft above 140 degrees Fahrenheit; therefore, it is less capable of supporting loads at those temperatures. That doesn't mean PVC melts at that temperature and it certainly doesn't mean PVC will ignite at that temperature. It doesn't mean PVC starts to give off flammable gas at that temperature. If Mr. Cutbirth believes the lint [in the dryer] was the fuel source, what does the maximum operating temperature of PVC have to do with how the lint combusted?

The district court concluded its discussion of Cutbirth's testimony by stating that the "opinion is simply an argument about an inference Plaintiff would like the jury to draw from various facts." The district court then excluded that portion of Cutbirth's opinion.

I conclude the district court abused its discretion in excluding Cutbirth's testimony. The district court engaged in fact finding and accepted as common knowledge facts a layperson is unlikely to know. The quoted portions of the district court's analysis above demonstrate the fact finding that should have been left to the jury. The district court made several factual findings regarding the use of PVC pipe that an average juror likely would not understand. Cutbirth's opinions which dealt with the safe temperature range for PVC pipe, the inappropriate use of PVC pipe in this particular application, and the difference between gas molecules and solid particulates causing static buildup inside the PVC pipe, are well beyond what jurors are likely to know based on their common sense and experience. Additionally, the district court injected itself and made credibility determinations by stating that an aspect of Cutbirth's opinion was "unlikely to be true." This determination is better left to the crucible of cross-examination and determination by the ultimate factfinder, the jury, rather than the district court. *See Nield v. Pocatello Health Services, Inc.*, 156 Idaho 802, 811, 332 P.3d 714, 723 (2014); *see also Pyramid Techs., Inc.*, 752 F.3d at 814.

The district court essentially acted as its own expert in making these factual findings and credibility determinations. As the majority notes, "the district court's statements about its own understanding of relevant scientific principles give this Court pause. . ." Despite that pause, the

majority ultimately concludes that the district court did not abuse its discretion in excluding Cutbirth's second opinion regarding the cause of the fire. I disagree with this conclusion and would instead hold that the district court improperly substituted its judgment for that of the jury in making both factual and credibility determinations and assuming that complex scientific knowledge was something that "any high school graduate ought to know."

However "shaky" the testimony proffered by either Hunt or Cutbirth seemed to the district court, such testimony should "be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

For the reasons discussed, I respectfully dissent from the majority's conclusion that the district court did not abuse its discretion in excluding portions of Hunt's and Cutbirth's opinions. I concur with the majority's conclusion that the district court erred in granting summary judgment to JLH.

Justice MOELLER concurs.